**STATECRAFT**
LAW · GOVERNMENT · CRISIS MANAGEMENT

649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
(602) 382-4078

Kory Langhofer, Ariz. Bar No. 024722
kory@statecraftlaw.com
Thomas Basile, Ariz. Bar. No. 031150
tom@statecraftlaw.com

*Attorneys for Proposed Intervenors Republican National Committee and National Republican Senatorial Committee*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, *et al.*, | No. 2:20-cv-01903-SPL |
| Plaintiffs, | |
| v. | **MOTION TO INTERVENE** |
| Katie Hobbs, in her official capacity as the Arizona Secretary of State, | |
| Defendant. | |

The Republican National Committee ("RNC") and the National Republican Senatorial Committee ("NRSC" and, together with the RNC, the "Proposed Intervenors") respectfully move to intervene in this action pursuant to Fed. R. Civ. P. 24. "Rule 24 traditionally receives liberal construction in favor of applicants for intervention," *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), and, as detailed below, the Proposed Intervenors' participation in these proceedings will not only protect their cognizable legal interests in the uniform and consistent enforcement of Arizona's voter registration laws, but

1

will facilitate the informed and expeditious resolution of the issues presented in the Complaint.

## ARGUMENT

### I. The Proposed Intervenors Are Entitled to Intervene As of Right

Intervention must be permitted

> when the proposed intervenor claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Ninth Circuit has distilled this provision to a four-part rubric. "A party seeking to intervene as of right must meet four requirements: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Arakaki*, 324 F.3d at 1083; *see also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). "In evaluating whether Rule 24(a)(2)'s requirements are met, we normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.' We do so because '[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'" *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal citations omitted). Each of the four elements is addressed below.

#### A. This Motion Is Timely

Any contention that the Proposed Intervenors tarried unreasonably before seeking to intervene is implausible on its face. This Motion was filed less than 48 hours after the Plaintiffs initiated their suit. The Proposed Intervenors' diligence in moving to intervene, compounded with the lack of pending discovery and the absence of any prior rulings on the

merits, militate strongly in favor of granting the Motion. *See Arakaki*, 324 F.3d at 1084 ("The district court did not abuse its discretion by finding Hoohuli's motion, filed three weeks after the filing of Plaintiffs' complaint, timely."); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("Applicants filed their motion to intervene in a timely manner, less than three months after the complaint was filed and less than two weeks after the Forest Service filed its answer to the complaint."); *Silver v. Babbitt*, 166 F.R.D. 418, 424 (D. Ariz. 1994) (allowing intervention when complaint was filed on February 17 and intervenor filed application on March 3).

Indeed, this Court has allowed motions to intervene that were preceded by a far longer temporal lapse, particularly when, as here, the Court has not yet resolved substantive issues in dispute and any alleged dilatoriness did not prejudice any named party. *See, e.g.*, *Acosta v. Huppenthal*, CV 10-623 TUC-AWT, 2012 WL 12829994, at *2 (D. Ariz. Feb. 6, 2012) ("It is true that the Motion to Intervene was filed more than fourteen months after Plaintiffs' initial Complaint and that it was filed after Defendant's Motion to Dismiss and Plaintiffs' Motion for Preliminary Injunction had been fully briefed and argued before the Court. However, no discovery has taken place and briefing on the parties' summary judgment motions is still ongoing."); *Equal Employment Opportunity Comm'n v. AutoZone, Inc.*, CV 06-1767-PCT-PGR, 2006 WL 8440511, at *1 (D. Ariz. Oct. 31, 2006) ("[T]he motion to intervene was timely brought because it was filed some nine weeks after the commencement of this action."); *Gila River Indian Cmty. v. United States*, CV10-1993 PHX-DGC, 2010 WL 4811831, at *2 (D. Ariz. Nov. 19, 2010) (six-week delay was not unreasonable, noting that intervention would not disrupt previously issued scheduling order). The Motion hence easily satisfies the timeliness criterion.

### B. The Proposed Intervenors Have a Significant Protectable Interest in the Litigation

The Proposed Intervenors "have a significant protectable interest in the action." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "To demonstrate a significant protectable interest, [the movant] must establish that the

3

interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue," but "'[n]o specific legal or equitable interest need be established.'" *Id.* "Instead, the 'interest' test directs courts to make a 'practical, threshold inquiry' and 'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal citations omitted).

An "interest" sufficient for intervention at least arguably can be more generalized and diffuse than an "injury" necessary for standing. *See Prete v. Bradbury*, 438 F.3d 949, 955 n.8 (9th Cir. 2006) (noting circuit split and declining to decide the question). The Proposed Intervenors' interest in this dispute, however, is so direct and palpable that the relief sought by the Plaintiffs would exact at least two cognizable legal injuries on them.

First, a distinct injury inheres in the existence of an unlawfully structured competitive electoral environment. The notion of competitive standing is not novel, and posits that a candidate or political party may challenge an election law or procedure that unlawfully "hurts the candidate's or party's own chances of prevailing in the election." *Townley v. Miller*, 722 F.3d 1128, 1135 (9th Cir. 2013) (internal citation omitted); *see also Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011) (affirming that "the 'potential loss of an election' was an injury-in-fact sufficient to give a local candidate and Republican party officials standing"). The deadline governing the submission of voter registration is a pillar of the "structur[e] of th[e] competitive environment," and Plaintiffs' requested relief would "fundamentally alter the environment in which [the Proposed Intervenors] defend their concrete interests (e.g. their interest in . . . winning [election or] reelection)." *Shays v. Federal Election Comm.*, 414 F.3d 76, 85-86 (D.C. Cir. 2005); *cf.* Wright & Miller, 7C FED. PRAC. & PROC. CIV. § 1908.1 (3d ed.) ("[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention.").

Second, and relatedly, an organization incurs a cognizable injury by a "frustrat[ion]" of "its mission," which "cause[s] it to divert resources in response to that frustration of purpose." *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1265 (9th Cir. 2020); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding that an alleged "impair[ment]" of organization's ability to carry out its mission engendered standing, explaining that "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests"); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 588 (5th Cir. 2006) (observing that "the goal of a political party is to gain control of government by getting its candidates elected" and that this interest can sustain legal standing). The Proposed Intervenors have predicated their own extensive voter registration efforts in Arizona on the statutorily fixed deadline of October 5, 2020. *See* Ariz. Rev. Stat. § 16-120. By upending this critical fixed premise of the electoral environment, the order sought by the Plaintiffs will impel the Proposed Intervenors to allocate additional scarce resources to voter registration activities in Arizona to ensure that they maintain competitive parity. *See infra* Section I.C.

In short, the Proposed Intervenors' interests in (1) preserving a predicable, fair and equitable electoral environment underpinned by the enforcement of neutral and generally applicable statutes, and (2) avoiding a diversion of organizational resources caused by last-minute displacements of key statutorily deadline easily suffice for intervention.

**C.     The Order Sought By Plaintiffs Would Directly Impair the Proposed Intervenors' Protectable Interests**

"Generally, after finding that a proposed intervenor has a significant protectable interest, courts have little difficulty concluding that the disposition of the case may affect it." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ampam Riggs Plumbing Inc.*, CV-14-00039-PHX-DGC, 2014 WL 1875160, at *5 (D. Ariz. May 9, 2014); *see also Sw. Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be

substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'").

Should the Plaintiffs obtain the relief they seek, the Proposed Intervenors will be impelled to redirect substantial funds and manpower to restarting their voter registration efforts in Arizona, and to educate prospective Republican registrants about the extended registration deadline. As explained in the Declaration of Brian Seitchik (attached hereto as Exhibit A), each additional week during which the voter registration deadline is extended will cost the Republican Committees approximately $37,000.  The Republican Committees' personnel will also be compelled to expend substantial time and resources developing alternative voter registration, get-out-the-vote drives, and Election Day operation strategies to account for the new reality and educating voters, volunteers, staff, and contractors regarding the change in Arizona's election rules.  *See* Seitchik Decl. ¶¶ 8-9.

The political, financial and logistical dislocations that a ruling in Plaintiffs' favor would inevitably engender for the Proposed Intervenors constitutes an impairment of their protected interests. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (finding that the need to "educate voters about Texas's [voter assistance laws]" was "an undertaking that consumed [the plaintiff's] time and resources in a way they would not have been spent" and so gave rise to organizational standing); *Common Cause Indiana v. Lawson*, 937 F.3d 944, 951 (7th Cir. 2019) (finding organizational standing where "the Organizations will be forced to spend resources cleaning up the mess" caused by challenged voter roll maintenance" and will "expend[] resources educating voters and community activities" about the issue); *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1165–66 (11th Cir. 2008) (same conclusion where "[t]he organizations reasonably anticipate that they will have to divert personnel and time to educating volunteers and voters" about registration issues).

### D. No Existing Party Adequately Represents the Proposed Intervenors' Interests

"The burden of showing inadequacy of representation is 'minimal,'" *Citizens for*

6

*Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011), and while it increases "when the government is acting on behalf of a constituency that it represents," *id.*, it is easily discharged in this case.

Although both the Secretary and the Proposed Intervenors take the position that the voter registration deadline prescribed by Ariz. Rev. Stat. § 16-120(A) is constitutionally sound and fully enforceable, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Id.* at 899 (internal citation omitted); *see also Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (allowing industry representatives' intervention in challenge to logging regulation that could affect existing timber contracts, noting that "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry"); *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties"); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 15 (D.D.C. 2010) ("[I]t is well-established that governmental entities generally cannot represent the 'more narrow and parochial financial interest' of a private party."); *Nat. Res. Def. Council v. McCarthy*, 16-CV-02184-JST, 2016 WL 3880702, at *4 (N.D. Cal. July 18, 2016) ("[T]he Proposed Intervenors are specifically concerned with their own interests in the water supplies affected by the challenged water standards, which are distinct from the interests of the EPA in defending its procedural scheme. The Court therefore cannot conclude that the EPA 'will undoubtedly make' all of the Proposed Intervenors' arguments."); *Arizona v. Jewell*, CV-15-00245-TUC-JGZ, 2016 WL 3475333, at *2 (D. Ariz. Jan. 25, 2016) ("Although [proposed intervenor] seeks the same general outcome as both the Plaintiffs and the other Plaintiff-Intervenors," its own uniquely situated interests supported intervention as of right).

This truism assumes particular salience in the electoral context. While the Secretary's "arguments turn on [her] inherent authority . . . [and] responsibility to properly

7

1  administer election laws, the Proposed Intervenors are concerned with ensuring their party
2  members and the voters they represent have the opportunity to vote in the upcoming federal
3  election, advancing their overall electoral prospects, and allocating their limited resources
4  to inform voters about the election procedures." *Issa v. Newsom*, 220CV01044MCECKD,
5  2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).  Here, the Secretary has not asserted
6  any ability or intention to safeguard the explicitly political, electoral and strategic interests
7  that underlie the Proposed Intervenors' participation in these proceedings.

8  More specifically, the Proposed Intervenors' interests diverge from those of the
9  Secretary in at least three respects.

10  ***First***, the Secretary's stated opposition to the Proposed Intervenors' participation in
11  this action is an *ipso facto* indicator of inadequate representation.  *See Utah Ass'n of Ctys.*,
12  255 F.3d at 1256 ("The government has taken no position on the motion to intervene in this
13  case. Its 'silence on any intent to defend the [intervenors'] special interests is deafening.'")
14  (internal citation omitted); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997
15  (10th Cir. 2009) (citing government's opposition to coordinating filings with proposed
16  intervenor in concluding that "we are convinced that [proposed intervenor] has established
17  a possibility of inadequate representation").

18  ***Second***, the Secretary's consent to a consolidation of the Plaintiffs' motion for
19  preliminary relief with a trial on the merits pursuant to Fed. R. Civ. P. 65 and apparent
20  position that this dispute presents pure questions of law bespeak a critical disagreement with
21  the Proposed Intervenors, who believe that the litigation entails significant factual
22  questions.  Specifically, the Proposed Intervenors intend to present to the Court evidence
23  that the Secretary will not—in the form of data and declarations relating to the collection of
24  ballot measure petition signatures during the relevant time period—which undermines the
25  Plaintiffs' allegation of a "burden" on their First and Fourteenth Amendment rights.  *See*
26  *generally Berg*, 268 F.3d at 823-24 (observing that "the interests of government and the
27  private sector may diverge.  On some issues Applicants will have to express their own
28  unique private perspectives and in essence carry forward their own interests").

8

***Third***, the Secretary has not confirmed any intention to prosecute a vigorous and expedited appeal of an adverse ruling. *See Americans United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990) ("We agree with the District of Columbia Circuit that a decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest."); *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 709 (M.D.N.C. 2014) (government's refusal to appeal "may . . . suggest that Movants are not adequately represented by existing parties"); *see also Wildearth Guardians*, 573 F.3d at 997 (noting the possibility of inadequate representation by government agency and pointing out that "government policy may shift"); *Virginia v. Ferriero*, CV 20-242 (RC), 2020 WL 3128948, at *4 (D.D.C. June 12, 2020) (commenting that "it is not difficult to see that the interests of Movants and the federal government 'might diverge during the course of the litigation,' *id.* at 736 particularly since the federal government 'remains free to change its strategy' as the case proceeds" (quoting *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 730 (D.C. Cir. 2003))). Should the Secretary decline to immediately appeal in such circumstances, only the Proposed Intervenors—by virtue of the direct injury to their legal interests that an adverse ruling would inflict, *see supra* Section I.B and I.C—would have standing to independently commence an appeal. *See generally United States v. Windsor*, 570 U.S. 744 (2013) (intervenor must have Article III standing to pursue its own appeal). The very real possibility that the Proposed Intervenors may well be the only party possessing the incentive and willingness to vindicate the enforcement of Arizona's voter registration deadline underscores at least a potential incongruence of interests with the Secretary. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 & n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate"; proof of certain divergence is not necessary).

## II. **In the Alternative, the Court Should Allow Permissive Intervention**

Even if the Court finds that one or more of the prerequisites for intervention as of right remain unsatisfied, it should allow the Proposed Intervenors to intervene permissively, pursuant to Rule 24(b).  That provision contemplates intervention by "anyone" who "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), provided that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights," *id.* 24(b)(3).  As apprehended by the Ninth Circuit, Rule 24(b) countenances permissive intervention "where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997).  Proposed Intervenors plainly meet each of these requirements, as this Court recently acknowledged when granting intervention to the RNC in a similar case involving challenges to rules for the 2020 election.  *See Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-01143-DLR (D. Ariz. June 26, 2020) (granting intervention to the RNC and noting that "given the importance of the issues Plaintiffs raise, the Court will benefit from hearing all perspectives").

### A. **The Court Has Jurisdiction to Hear the Proposed Intervenors' Defenses and Arguments**

The Proposed Intervenors' participation in these proceedings is sustained by the same jurisdictional basis that undergirds the entirety of this action—*i.e.*, the presence of claims arising under the Constitution and laws of the United States.  *See* 28 U.S.C. § 1331.  As the Ninth Circuit has explained, the necessity of a jurisdictional predicate for intervention "stems . . . from our concern that intervention might be used to enlarge inappropriately the jurisdiction of the district court" by supplying a diversity of citizenship that otherwise is lacking among the named parties or, alternatively, divesting the Court of jurisdiction over cases that previously featured diversity of citizenship.  *See Freedom from*

10

*Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). By contrast, when the main action is predicated on federal question jurisdiction, the requirement to demonstrate an independent jurisdictional basis for intervention arises "only where a proposed intervenor seeks to bring new state-law claims," *id.* at 844, which is not the case here.

### B. The Motion to Intervene Is Timely

The mere two-day interregnum between the initiation of this action and the filing of the instant Motion was not unreasonable, nor did it inflict any articulable prejudice on any party. The Court has not yet issued any substantive rulings on the merits, and intervention does not threaten to upend the resolution of any previously settled issues or the existing parameters of the litigation. *See, e.g.*, *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1101 (9th Cir. 1999) (allowing permissive intervention when motion was filed 12 weeks into the litigation, deeming the delay not unreasonable and noting the lack of prejudice); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 n.10 (9th Cir. 2002) (affirming grant of permissive intervention, reasoning that "because the intervention motions were filed near the case outset and the defendant-intervenors said they could abide the court's briefing and procedural scheduling orders, there was no issue whatsoever of undue delay"), *abrogated in part on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *WildEarth Guardians v. Zinke*, CV-18-00048-TUC-JGZ, 2018 WL 3475441, at *2 (D. Ariz. July 19, 2018) (allowing intervention on both mandatory on permissive grounds, noting that "[t]his case is at an early stage and briefing on Defendants' pending motion to dismiss has not closed").

### C. The Proposed Intervenors' Arguments Will Relate to the Same Factual and Legal Questions Already in Dispute and Will Contribute to an Informed Adjudication of Plaintiffs' Claims

Not only do the Plaintiffs' claims and the Proposed Intervenors' arguments share at least one common legal question, they are effectively coterminous in their subject matter. *See generally Andrews v. Triple R. Distrib., LLC*, CV 12-346-TUC-HCE, 2012 WL 3779932, at *2 (D. Ariz. Aug. 31, 2012) ("The determination of whether a

'common question' exists is liberally construed." (internal citation omitted)). The Proposed Intervenors are prepared to litigate on the legal terrain delineated in the Plaintiffs' Complaint—*i.e.*, the constitutional validity and enforceability of Arizona's voter registration deadline. While they reserve the right to invoke any and all arguments that may bear on the Plaintiffs' claims, the Proposed Intervenors do not intend to raise additional claims, counterclaims or cross-claims against any party. *See A.D. v. Washburn*, CV-15-01259-PHX-NVW, 2016 WL 5464582, at *5 (D. Ariz. Sept. 29, 2016) (concluding that permissive intervenor's desire to defend the statute challenged by the plaintiffs provided the requisite common question of law and fact); *WildEarth Guardians*, 2018 WL 3475441, at *4 (finding common question when "[b]oth the [proposed intervenor] and Defendants seek to defend the validity and adequacy of" challenged agency plan); *contrast Melendres v. Arpaio*, 07-2513-PHX-MHM, 2008 WL 4446696, at *2 (D. Ariz. Sept. 30, 2008) (denying permissive intervention where issues raised by proposed intervenor "seem to be predicated on entirely separate events" relating to the alleged activities of a non-party).

In sum, by proffering an otherwise unrepresented perspective—animated by their singular electoral and partisan stake in the enforcement of Arizona's statutory voter registration deadline—while respecting the litigation parameters demarcated by the Court and the named parties, the Proposed Intervenors will contribute to the informed adjudication of the case without unreasonably augmenting or prolonging the proceedings. *See Feldman v. Arizona Sec'y of State's Office*, CV-16-01065-PHX-DLR, 2016 WL 4973569, at *2 (D. Ariz. June 28, 2016) (finding that political party committee intervenors "bring a different perspective to the complex issues raised in this litigation. The Court might benefit from hearing these viewpoints."). The Court accordingly should permit their intervention.

**III. If Intervention is Denied, the Court Should Accept the Proposed Intervenors' Response to the Motion for Temporary Restraining Order as an *Amicus Curiae* Brief and Allow Proposed Intervenors to Renew Their Motion After Judgment Is Entered**

Should the Court find that the Proposed Intervenors are not entitled to intervene as of right and decline to permit them to intervene permissively, it should, in the alternative, allow the Proposed Intervenors leave to (1) file their proposed Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as a brief of *amici curiae*, and (2) renew this Motion to Intervene if and to the extent that the Secretary (a) enters into a settlement of the Plaintiffs' claims and/or (b) declines to appeal on an expedited basis any final judgment entered in favor of the Plaintiffs on any claim. *See Fisher-Borne*, 14 F. Supp. 3d at 710 (allowing limited intervention to preserve right of appeal).

## CONCLUSION

For the foregoing reasons, the Court should permit the Proposed Intervenors to intervene in this action either as of right or on a permissive basis, pursuant to Fed. R. Civ. P. 24.

RESPECTFULLY SUBMITTED this 2nd day of October, 2020.

STATECRAFT PLLC

By: */s/ Thomas Basile*
   Kory Langhofer
   Thomas Basile
   649 North Fourth Avenue, First Floor
   Phoenix, Arizona 85003

   *Counsel for Proposed Intervenors Republican National Committee and National Republican Senatorial Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2020, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.

By:   /s/Thomas Basile
       Thomas Basile