Kara Karlson (029407)
Linley Wilson (027040)
2005 North Central Avenue
Phoenix, AZ 85004-1592
Telephone (602) 542-4951
kara.karlson@azag.gov
linley.wilson@azag.gov
adminlaw@azag.gov

*Attorneys for Defendant*
*Arizona Secretary of State Katie Hobbs*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> Katie Hobbs, in her official capacity as Arizona Secretary of State, <br><br> Defendant. | No: CV-20-01903-PHX-SPL <br><br> **ARIZONA SECRETARY OF STATE'S RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 2

   A. Arizona's Voter Registration Deadline and the COVID-19 Pandemic ................ 2

   B. Plaintiffs' Last-Minute Request for A Mandatory Injunction ............................. 4

III. ARGUMENT .............................................................................................................. 5

   A. Plaintiffs Are Not Likely to Succeed on the Merits of their Claims .................... 6

      i. Plaintiffs Lack Standing. ................................................................................ 6

      ii. The *Purcell* and Laches Doctrines Warrant Dismissal ................................... 8

      iii. Jurisdictional Defects aside, Plaintiffs' Claims Fail on the Merits ................ 9

      iv. Any Incidental Burden Is Justified by the State's Interests .......................... 10

      v. The COVID-19 Pandemic Does Not Render the Deadline
         Unconstitutional ............................................................................................ 11

   B. Plaintiffs Have Not Demonstrated Irreparable Harm ......................................... 14

   C. The Balance of Equities and the Public Interest Favor the Secretary ................ 14

IV. CONCLUSION ......................................................................................................... 15

## I. INTRODUCTION

For 30 years, Arizona law has required voters to register to vote at least 29 days before an election. *See* A.R.S. § 16-120 ("Deadline").[1] This year, the Deadline that applies to the upcoming November 3rd General Election ("General Election") falls on Monday, October 5, 2020.

The Plaintiffs here—two organizations and one individual engaged in voter registration efforts (Compl., ¶¶ 15-17)—waited until a mere *three business days* before the Deadline to bring this lawsuit. And they seek the extraordinary remedy of a mandatory injunction to alter the Deadline. Plaintiffs seek to move the Deadline from 29 days before early voting begins, to 7 days before Election Day, contending that enforcement of the Deadline during the COVID-19 pandemic is unconstitutional "as applied during these circumstances." *See* Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") at 2.

Plaintiffs fail to satisfy their high burden of showing that the facts and the law clearly favor them to warrant a mandatory injunction. *First*, Plaintiffs are not likely to succeed on the merits of their First or Fourteenth Amendment claims. Their claims suffer from several jurisdictional defects, including that Plaintiffs lack Article III standing and have failed to join indispensable parties to this lawsuit—i.e., the county recorders in Arizona's 15 counties. Additionally, Plaintiffs' eleventh-hour request is unreasonable and should be dismissed based on either the *Purcell* doctrine, *see Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006), or the related doctrine of laches. And contrary to Plaintiffs' allegations, Arizona's Deadline is constitutional; the COVID-19 pandemic does not compel a different conclusion.

*Second*, Plaintiffs fail to show that enforcement of the existing deadline will result in irreparable injury. Plaintiffs' theory of irreparable injury is non-cognizable and

---

[1] In 1990, the Arizona Legislature modified the previous 50-day voter registration deadline, which had been in place since at least 1979, *see* Ex. A, to a 29-day deadline that is still in force today. *See* 1990 Ariz. Legis. Serv. 321 (H.B. 2074).

self-inflicted. Moreover, available data does not suggest that voters have been, or will be, unable to register in time to vote by the October 5th deadline despite diligent efforts to do so. In fact, the data shows (contrary to Plaintiffs' assertions) that more Arizonans have registered to vote this year than in the 2016 presidential election year.

*Third*, the balance of equities and public interest considerations tip sharply against Plaintiffs. Plaintiffs oversimplify and minimize the significant hardships to election officials that would result from a last-minute judicial modification of Arizona's Deadline. This type of extraordinary relief is also certain to cause voter confusion and erode public confidence in the integrity of Arizona's election processes, which "has independent significance." *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 197 (2008). Granting Plaintiffs' Motion would amount to an "overbroad injunction" that is not "narrowly tailor[ed]" to "specific threatened harms[.]" *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1142 (9th Cir. 2009) (reversing grant of preliminary injunction where the district court "fail[ed] to properly consider the balance of hardships and the public interest" and "enter[ed] an overbroad injunction").

## II.   BACKGROUND

### A.   Arizona's Voter Registration Deadline and the COVID-19 Pandemic

Since March of 2020, people throughout the world have encountered various challenges as a result of the COVID-19 pandemic. Plaintiffs have been well aware of the pandemic's effect on their voter registration activities, alleging that at least since March 30, their in-person registration efforts were restricted. Compl. ¶ 58. Governor Ducey's stay-at-home order expressly *exempted* constitutionally protected speech activities such as voter registration efforts. Ariz. Exec. Order No. 2020-18 (Mar. 30, 2020) at 3.

Meanwhile, the Deadline of October 5, 2020, has been highly publicized through a variety of formats for months in anticipation of the General Election. For example:

- The Arizona 2020 General Election Publicity Pamphlet, which is posted on the Secretary's website and mailed "to every household that contains a registered voter[,]" *see* A.R.S. § 19-123(B), states: "**DEADLINE:** You must register to vote by **October 5, 2020** to

- participate in the November 3, 2020 General Election." The Publicity Pamphlet, which has already been mailed this year, informs voters that they may register online or by using voter registration forms included in the Pamphlet.[2]

- On September 21, 2020, the Secretary issued a press release to recognize National Voter Registration Day, September 22, 2020. The Secretary announced: "National Voter Registration Day is a perfect opportunity to remind people that the voter registration deadline to participate in the 2020 General Election is October 5, which is just a few weeks away."[3]

- On September 22, 2020, the Arizona Republic published an article reminding voters that "[t]he deadline to register to vote in Arizona is Oct[ober] 5, less than two weeks away" and that "[o]nly people who register before the deadline can vote in the Nov. 3 election for president, U.S. Senate and a host of other offices." *See* The Arizona Republic, *How to register to vote in Arizona on National Voter Registration Day (or any day before the deadline)* (Sept. 22, 2020).[4]

- The "Arizona Voter Registration Form" itself, which the Secretary provides on her website and included in the Publicity Pamphlet, is accompanied by an instruction that states: "You must register at least 29 days before the election (or the next business day if that deadline falls on a holiday)." *See* Ex. B.

In light of COVID-19, the Secretary, as the State's Chief Election Official, has taken affirmative steps to enable voters to more easily register to vote. *See* Ex. C (Declaration of Bo Dul). For example, ServiceArizona was updated to allow voters with nonstandard addresses to register online. *Id.* at ¶ 4. The Secretary also created a unique URL program to allow the recognized political parties and nonpartisan civic engagement organizations to conduct online voter registration drives and track and identify voters who register through the organization's unique URL. *Id.* at ¶ 5.

---

[2] https://azsos.gov/sites/default/files/2020_General_Election_Publicity_Pamphlet_English.pdf. This Court should take judicial notice of records that are publicly available on the Secretary's website and not subject to reasonable dispute. *See* Fed. R. Evid. 201(b); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of official information posted on governmental website).

[3] https://azsos.gov/about-office/media-center/press-releases/1224.

[4] https://www.azcentral.com/story/news/politics/elections/2020/09/22/register-vote-arizona-how-to-deadlines-request-mail-in-ballot/3493021001/

1    The Secretary also developed detailed procedures and trained staff to provide voter registration assistance to Arizonans who call 1-877-THE-VOTE. *Id*. at ¶ 8. These procedures, consistent with existing laws and deadlines, include assistance with initiating the submission of a voter registration form by the October 5th deadline for eligible registrants who cannot use ServiceArizona. This may be because these individuals lack certain forms of identification or do not have internet access and a printer and cannot obtain a paper form in time to submit it by the deadline. *Id*. These new procedures ensure voters can submit a registration application on or before the Deadline without having to engage in in-person contact that could transmit COVID-19.

### B.   Plaintiffs' Last-Minute Request for A Mandatory Injunction

By asking this Court to extend the Deadline to a date that Plaintiffs prefer, Plaintiffs undermine the Secretary's work aimed at administering a safe and secure General Election consistent with existing law and timelines. *See* Motion at 1-2. Notably, Plaintiffs stated during the status conference on October 1 that they engaged in voter registration efforts "on the street" in late August. And they have known about COVID-19 since March. Yet Plaintiffs still waited until ***September 30th*** to bring this lawsuit.

In support of their request for extraordinary relief, Plaintiffs allege that "voter registration this year is significantly lower than in 2016, the last Presidential year." Compl., ¶ 61. Plaintiffs further contend that in 2016, between January and August, "146,214 new voters registered[,]" compared to "only 62,565 registrations" during the same period this year. *Id*. Although Plaintiffs do not explain the basis for their calculations, it appears that they relied on quarterly reports published by the Secretary. Plaintiffs' calculations based on these reports are superficial at best because the total number of registered voters fluctuates throughout the year as a result of list maintenance when records are inactivated or cancelled, election activity, promotions like National Voter Registration Day, and other factors. In any event, the Secretary's data below, which is more comprehensive and up-to-date than Plaintiffs' data, shows that overall, voter registrations have ***increased*** and surpassed the number of registrations in 2016:

4

- The number of active voters with an original registration date between January 1, 2020 and October 1, 2020 is **389,284**.

- The total number of active voters as of October 1, 2020, is **4,160,915**, which represents an *increase* of **234,266** since January 1, 2020. The total number of active voters also exceeds the number of active registered voters as of the voter registration deadline for the 2016 general election (3,588,466) by approximately half a million voters.

- On Voter Registration Day alone (September 22, 2020), 40,294 Arizonans registered to vote or updated their registration online. And approximately 4,730 Arizonans did so using paper registration forms.

*See* Ex. C at ¶¶ 10-11.

The data does not support Plaintiffs' allegation that enforcement of the existing October 5, 2020 deadline, "[a]s applied during the ongoing COVID-19 emergency," will "severely burden[] Plaintiffs' ability to exercise core political speech and associational rights in voter registration drives[.]" Compl., ¶ 109. Instead, the data suggests that the Secretary's proactive efforts to communicate the Deadline and encourage timely voter registrations have been successful and that voters are *not* encountering significant difficulties registering to vote during the pandemic.

### III.   ARGUMENT

Plaintiffs seeking a preliminary injunction have the burden to show: 1) that they are likely to succeed on the merits; 2) that they are likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in their favor; and 4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The balance of the equities and public interest factors merge when the State is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). When a plaintiff seeks to change the status quo, as in this case, the plaintiff's burden is much heavier. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). A mandatory injunction is not issued in doubtful cases, *id.* at 879, and should not be granted "unless

5

the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986).

### A. Plaintiffs Are Not Likely to Succeed on the Merits of their Claims

As a threshold matter, Plaintiffs are unlikely to succeed on the merits of their claims because their complaint suffers from numerous jurisdictional defects.

**i.** *Plaintiffs lack standing.* At the preliminary injunction stage, plaintiffs must make a clear showing of each element of standing to sue in federal court under Article III of the Constitution. *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013). A plaintiff seeking to establish standing must demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 180-81 (2000) (quotation omitted).

The organizational Plaintiffs contend that "[b]ecause of the pandemic restrictions," they "have only been able to register approximately 23,000 new voters instead of their targeted 55,000." Motion at 4. Plaintiffs cite no authority for their apparent proposition that an organization can establish an Article III injury by simply pointing to the organization's goal and stating that they failed to achieve it. And by Plaintiffs' own admission, they fail to establish causation because they attribute their alleged injury (failure to achieve a self-imposed goal of registering 55,000 new voters) to circumstances and factors outside the Secretary's control. This is insufficient. *See Spokeo v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (injury must be "fairly traceable" to a defendant to meet the "irreducible constitutional minimum" of standing to proceed); *Thompson v. Dewine*, 959 F.3d 804, 810 (6th Cir. 2020) ("And we must remember, First Amendment violations require state action. … So we cannot hold private citizens' decisions to stay home for their own safety against the State.").

Plaintiffs' injuries are also not redressable. Plaintiffs have failed to name indispensable defendants—Arizona's 15 county recorders who are statutorily responsible for receiving voter registrations 29 days before an election, *see* A.R.S. § 16-120(A). County recorders are indispensable to this litigation because the relief Plaintiffs seek—an extension of the Deadline to October 27—will require county elections officials to expend significant resources to process voter registration forms during the early voting period, on an expedited basis, to ensure that (1) early ballots are sent to voters who want them; and (2) registration rolls are updated to accurately reflect voter registrations that are not finalized until a few days before Election Day.

Plaintiffs appear to have overlooked this problem, and many other downstream consequences as a result of their extremely tardy request. But the election officials who are best situated to address these glaring issues have not been named as defendants. This renders Plaintiffs' claims non-redressable. *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (holding injury not redressable where plaintiffs failed to name United States as a party despite knowing the government's participation was required); *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002) (failure to join indispensable parties warrants dismissal under Federal Rule of Civil Procedure 12(b)(7)).[5]

---

[5] Although this Court previously rejected the Secretary's argument that county officials were necessary parties in a previous challenge to Arizona's voter registration deadline in *Arizona Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427 (D. Ariz. 2016), the plaintiffs in that case sought narrow relief: an order that would allow voters whose registration applications were received *one* day after the deadline (which fell on a holiday that year) to vote in the 2016 general election. Here, in contrast, the relief Plaintiffs seek—a three-week extension of the deadline—imposes a much more severe burden on county officials. Thus, "resolving the action in [the counties'] absence may as a practical matter impair or impede [their] ability to protect that interest." *Salt River Project Agr. Imp. And Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing Fed. R. Civ. P. 19(a)(1)(B)(ii)). And although Plaintiffs note that the Secretary has authority to promulgate official election rules (Motion at n.1), those rules could not have promulgated a registration deadline that contravenes Arizona law, and any update to the Election Procedures Manual must be approved by the Governor and Attorney General to take effect. *See* A.R.S. § 16-452 (election procedures are intended to "achieve and maintain the maximum degree of correctness").

1       **ii. *The Purcell and Laches Doctrines Warrant Dismissal.*** In *Purcell*, the Supreme Court affirmed the cardinal rule that federal courts should not alter election rules on the eve of an election. 549 U.S. 1, 5 (2006). The Court explained that "[c]ourt orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5. This risk of voter confusion will only increase "[a]s an election draws closer." *Id.* In *Republican National Committee v. Democratic National Committee*—within the first month of the pandemic—the Supreme Court granted a stay of a district court injunction that changed absentee ballot deadlines to "allow[] ballots to be mailed … after election Day." 140 S.Ct. 1205, 1207 (2020). The Court emphasized that the injunction changed the election rules "close to the election date" and "in essence enjoined nonparties to th[e] lawsuit." *Id.* By doing so, the Court concluded, the district court "contravened [the Supreme Court's] precedents … repeatedly emphasiz[ing] that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Id.* (citations omitted). Plaintiffs' requested relief here falls squarely within the *Purcell* doctrine.

      For similar reasons, Plaintiffs' claims should be dismissed under the laches doctrine based on Plaintiffs' unreasonable delay in bringing suit. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) (courts consider "the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action" and assess the reasonableness of the period of inaction) (citation omitted). The Deadline is not new. It has existed for three decades. And the pandemic has been ongoing for the past seven months. Plaintiffs admit they were fully aware of the challenges presented by the pandemic; yet they waited until *three business days* prior to the Deadline to file suit. This is objectively unreasonable.

      And Plaintiffs' delay prejudices the Secretary. Like the Plaintiffs, the Secretary faces new challenges relating to COVID-19. But the Secretary has taken proactive measures to ensure that Arizonans can register to vote. *See* Ex. C. This litigation undermines and diverts resources from those efforts. *See Garcia v. Griswold*, 2020 WL

1 4926051, *4 (D. Colo. Aug. 21, 2020) (reasoning plaintiffs "are not strongly likely to
2 succeed on the merits" where Colorado Secretary of State "is likely to succeed in
3 proving a laches defense").

4       **iii.** ***Jurisdictional Defects Aside, Plaintiffs' Claims Fail on the Merits.*** Plaintiffs
5 also fail to state a claim upon which relief can be granted. The federal Constitution
6 authorizes State legislatures to prescribe the "Times, Places and Manner of holding
7 Elections . . ." U.S. Const. art. I, § 4, cl. 1.  States "retain broad authority to structure and
8 regulate elections." *Short v. Brown*, 893 F.3d 671, 676 (9th Cir. 2018). The
9 *Anderson/Burdick* framework applies to Plaintiffs' claims, and the level of scrutiny
10 depends on the severity of the burden. *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992);
11 *Anderson v. Celebreeze*, 460 U.S. 780, 789 (1983). Under this framework, courts "must
12 first consider the character and magnitude of the asserted injury to the rights . . . that the
13 plaintiff seeks to vindicate." *Short*, 893 F.3d at 676. If the asserted injury evidences no
14 burden, there is "no reason to call on the State to justify its practice." *Ariz. Libertarian*
15 *Party v. Reagan*, 798 F.3d 723, 732 n.12 (9th Cir. 2015). In *Burdick*, the Supreme Court
16 recognized that "[e]lection laws will invariably impose some burden upon individual
17 voters," and that as a result, "there must be a substantial regulation of elections if they
18 are to be fair and honest and if some sort of order, rather than chaos, is to accompany the
19 democratic processes." 504 U.S. at 433 (internal quotation marks and citation omitted).
20 Minimal burdens from generally applicable and even-handed regulations are justified by
21 a State's important regulatory interests. *Timmons v. Twin Cities Area New Party*, 520
22 U.S. 351, 358 (1997).

23       Here, complying with Arizona's longstanding statutory Deadline is not
24 burdensome, and the Deadline is easily justified by the State's interests. Far short of an
25 "extensive restriction," a reasonable, generally-applicable election deadline—the
26 quintessential time regulation—does not impose a meaningful burden on the right to
27 vote. *See Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973) (upholding constitutionality
28 of deadline to register with a political party to participate in primary election); *Barilla v.*

1 *Ervin*, 886 F.2d 1514, 1524 (9th Cir. 1989) (upholding pre-election deadline to reregister after moving within a county), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1989). In *Barilla*, for example, the Ninth Circuit upheld a voter registration deadline despite the fact that plaintiffs had been denied the ability to vote because their mailed-in registrations were received after, but mailed before, the deadline. *Id*. at 1517. The Ninth Circuit rejected the argument that strict scrutiny should apply and instead followed the Supreme Court's lead in *Rosario* that the *Anderson/Burdick* balancing test is the appropriate standard for review of election deadlines. *See id*. at 1523-25. "What is at issue here is not a 'ban' on plaintiffs' right to vote, [as would be required for strict scrutiny to apply] but rather, a 'time limitation' on when plaintiffs had to act in order to be able to vote." *Id*. at 1525. The deadline "easily" satisfied that test. *Id*. Likewise, Arizona's Deadline is also constitutional.

**iv.** *Any Incidental Burden Is Justified by the State's Interests*. The State's interests easily satisfy the balancing test required by the *Anderson/Burdick* framework. Those interests include finality, promoting voter confidence, orderly election administration, and "protecting the integrity, fairness, and efficiency of [] ballots and election processes." *Timmons*, 520 U.S. at 364; *see also Purcell*, 549 U.S. at 4 ("Confidence in the integrity of our electoral processes is essential to the function of our participatory democracy."); *Crawford*, 553 U.S. at 192-97 (recognizing state's interest in promoting voter confidence and improving election administration). Having a voter registration deadline fall on the 29th day prior to a general election is imminently reasonable so that elections officials may compile the lists of eligible voters to administer an honest and orderly election. *See Marston v. Lewis*, 410 U.S. 679, 681 (1973); *Perry v. Judd*, 471 F. App'x 219, 226 (4th Cir. 2012) ("Ballots and elections do not magically materialize. They require planning, preparation, and studious attention to detail if the fairness and integrity of the electoral process is to be observed.").

Further, extending the registration deadline by three weeks would cause a host of other problems for elections officials. Plaintiffs want a registration deadline of October

10

1   27—which would fall *after* the October 23 deadline for voters to request an early ballot
2   in Arizona. *See* A.R.S. § 16-542; Ex. C at ¶ 13. Arizona's voter registration forms
3   provide a designated space for a voter to request placement on the permanent early voter
4   list. *See* Ex. B. If a voter checks that box and the form is received by county officials at
5   or near the October 23 deadline to request a ballot, there is no guarantee that the form
6   will be processed in time for local elections officials to send a ballot, much less for the
7   voter to return it by 7:00 p.m. on Election Day. *See* A.R.S. § 16-550. Thus, voters who
8   expect to receive an early ballot may not receive one. Additionally, early voting begins
9   October 7. *See* A.R.S. § 16-542. If the Deadline were extended, election officials would
10  have to simultaneously process voter registrations and early ballots. Arizona already has
11  high rates of early voting, but with the pandemic those numbers are sure to be higher. A
12  Court order asking election officials to process voter registrations while simultaneously
13  processing early ballots—where election officials have had no time to prepare at this late
14  stage—presents a significant burden. As this Court noted in 2016 in a similar lawsuit,
15  "the voter registration deadline is only one step in a series of orchestrated events that
16  must take place before the election, and officials must strategically undertake a
17  multitude of critical tasks imposed by law." *See Reagan*, 2016 WL 6523427 at *11.

18       Plaintiffs' request for a mandatory injunction would add additional (as of yet)
19  undetermined) steps in a delicate framework that has been refined to accurately process
20  millions of votes in a safe, secure, and efficient manner. "[N]othing about [the process
21  entailed with Plaintiffs' request] can be accurately described as mere administrative
22  inconvenience or "easily manageable." *Id*. The State's interests in enforcing the
23  Deadline easily justify the limited burden imposed on Plaintiffs.

24       **v.** ***The COVID-19 Pandemic Does Not Render the Deadline Unconstitutional***.
25  Finally, Plaintiffs' arguments relating to COVID-19 do not strengthen their claims.
26  Given the uncertainty and instability surrounding COVID-19, the State has an even
27  stronger interest in adhering to Deadline to ensure the orderly administration of the
28  election and preserve public confidence in the integrity of the election. *See Crawford*,

11

553 U.S. at 197.[6] Again, Plaintiffs primarily rely on their own self-imposed goal to register 55,000 voters to argue that their failure to reach that goal means that Arizona's Deadline is unconstitutional. *See* Motion at 6. But the State's overall registration totals suggest that Arizonans have been able to timely register, despite COVID-19. In fact, more Arizonans are registered to vote in 2020 than were registered to vote by the voter registration deadline for the General Election in 2016. That voters have not chosen to register to vote by using Plaintiffs' services does not call into question the constitutionality of the Deadline. And an order from this Court extending the Deadline will not have anything to do with whether Arizonans will decide to have Plaintiffs assist them in registering to vote.

The cases Plaintiffs cite do not help them either. *See* Motion at 7-8. Plaintiffs omit several distinguishing facts from all of these cases, the first of which is that most were decided within the first two months of the pandemic. Second, an important fact was whether the government's orders restricting activities outside the home exempted constitutionally protected speech activities. *See Fair Maps Nevada v. Cegavske*, No. 3:20-cv-00271, 2020 WL 2798018, at *13 (D. Nev. May 29, 2020) (emphasizing "the Stay at Home Order did not permit circulators to be out collecting signatures"); *Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154, at *4 (E.D. Mich. Apr. 20, 2020) (granting candidate relief where governor's stay-at-home order did not exempt free speech activities).[7] Third, the cases Plaintiffs cite involved requirements that the activity be conducted in-person. *See Libertarian Party of Illinois v. Pritzker*, No. 20-CV-

---

[6] *See also* Michael Morley, *Election Emergencies: Voting in the Wake of Natural Disasters and Terrorist Attacks*, 67 Emory L.J. 545, 593 (2018) (states have "important interests in adhering to voter registration deadlines in the wake of election emergencies to allow them to focus their resources on recovering from the emergency, ensuring the accuracy of voter registrations they have received, relocating polling places as needed, ensuring adequate staffing for the voting period, and otherwise minimizing the likelihood of errors or delays in voting.").

[7] Additionally, in *Esshaki*, "the State conceded at oral argument that the signature-gathering due date [April 21] could be moved back to May 8, 2020 without significant impairment of the State's interests." 2020 WL 1910154 at *7.

12

2112, 2020 WL 1951687, at *1 (N.D. Ill. Apr. 23, 2020); *Goldstein v. Sec'y of Commonwealth*, 484 Mass. 516, 520, 142 N.E.3d 560, 566 (2020). But in cases where—as here—the orders exempted constitutionally protected speech activities and there are no in-person requirements, COVID-19 was an insufficient reason to grant the relief requested. *See, e.g., Thompson*, 959 F.3d at 810 (upholding election regulations for signature-gathering in support of initiatives and stating that "we believe that Ohio's express exemption [of First Amendment protected activity] is vitally important here."); *Common Sense Party v. Padilla*, 2020 WL 3491041, at *1 (E.D. Cal. June 26, 2020).

*Padilla*, which specifically addressed voter registration activities, is instructive here. In that case, the Common Sense Party sued to enjoin enforcement of a California law that required a minimum number of registered voters for a party to qualify for recognition on the presidential election ballot. *Padilla*, at *1. The Party alleged the pandemic prevented them from registering a sufficient number of voters. *Id*. In denying relief, the court cited the numerous ways plaintiffs could register voters without direct physical contact and the fact that the governor's orders exempted election-related activities. *Id*. at *6. The court concluded "a short window where in-person solicitation may not have been permitted does not qualify as a 'severe' burden." *Id*. These circumstances are present here. Plaintiffs do not have to take action within a limited window of time to accomplish their election-related objectives. *See, e.g., Pritzker*, 2020 WL 1951687, at *4. There is no time window; a person in Arizona can register to vote years in advance of an election.[8]

In short, neither the facts nor the law "clearly favor" Plaintiffs. *See Comm. of Cent. Am. Refugees*, 795 F.2d at 1441; *see also Soules v. Kauaians for Nukoli Campaign Comm.,* 849 F.2d 1176, 1182–83 (9th Cir. 1988)) (while courts have a duty to ensure

---

[8] Cases dealing with the aftermath of a hurricane, and the attendant effects on *voters*' rights *immediately* after a storm, are also inapposite. *See* Motion at 7-8 (citing *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016), and *Ga. Coal for the People's Agenda, Inc. v. Deal*, 214 F. Supp. 1344 (S.D. Ga. 2016)).

13

1 that elections "conform to constitutional standards," courts must "undertake that duty with a clear-eyed and pragmatic sense of the special dangers of excessive judicial interference with the electoral process").

### B. Plaintiffs Have Not Demonstrated Irreparable Harm

Because Plaintiffs' likelihood of success on the merits is extremely low, their threshold requirement for showing irreparable harm is heightened. *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Plaintiffs cannot satisfy this heightened threshold for several reasons, even in light of COVID-19.

First, Plaintiffs' claim of irreparable injury (failure to achieve their organization's goal of registering 55,000 voters) allegedly caused by the Deadline is not cognizable. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("[s]elf-inflicted wounds are not irreparable injuries"). There are numerous election regulations with which voters must comply to have their vote counted. If an organization wishes for certain voters' ballots to be counted, the organization must educate those voters on how to comply with those deadlines. No irreparable injury could be claimed for resources diverted to educating voters on any *constitutional* election regulation. Again, Plaintiffs' failure to show any likelihood of success on the merits dooms their claim of irreparable injury.

Plaintiffs' claim here that the Deadline is unconstitutional is not related to any increased hardship associated with the pandemic. While the pandemic creates significant challenges in an election year, it does not justify rewriting Arizona's 30 year-old statute on the eve of an election. The very real reasons it made sense to temporarily suspend election laws in other states to account for COVID-19 when it first emerged do not support enjoining the Deadline seven months after COVID-19 began community spread.

### C. The Balance of Equities and the Public Interest Favor the Secretary

Enjoining the Deadline is not in the public interest, and the balance of equities favors the Secretary. "[D]istrict courts must give serious consideration to the balance of equities." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (citation omitted). In doing so, courts must consider "all of the competing interests at stake." *Id*.

14

1  "[T]he less certain the district court is of the likelihood of success on the merits, the
2  more plaintiffs must convince the district court that the public interest and balance of
3  hardships tip in their favor." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d
4  914, 918 (9th Cir. 2003). This burden is even higher when, as here, Plaintiffs seek a
5  mandatory injunction that would require this Court to rewrite state law for the coming
6  election. *See Comm. of Cent. Am. Refugees*, 795 F.2d at 1441.

7  Of course, Plaintiffs and the Secretary alike benefit from ensuring public health
8  and safety. *See Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 169
9  (2d Cir. 2005) ("public health" is a "significant public interest"). But the facial
10 constitutionality of the Deadline is not disputed, and the public interest is not served by
11 enjoining the statute. Plaintiffs' requested relief only increases potential burdens
12 associated with this last-minute request. Critically, Plaintiffs do not acknowledge the
13 clear tension between their proposed deadline and other statutory deadlines with which
14 county officials must comply. Plaintiffs' proposal would conflict with information in the
15 Secretary's Publicity Pamphlet and other official election communications that have
16 already been published and disseminated. *See* Ex. C.

17 Finally, Plaintiffs overlook important public interest implications associated with
18 enjoining the statute. Enjoining any state law, particularly a well-established and
19 generally-applicable election law, has significant consequences. The State's legislative
20 process is entitled to respect, and a state "suffers an irreparable injury whenever an
21 enactment of its people or their representatives is enjoined." *Coal. v. Econ. Equity v.*
22 *Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). The Deadline does not violate the
23 Constitution. Plaintiffs have not established that the balance of equities and public
24 interest favor an injunction, and COVID-19 does not alter this outcome.

### IV.  CONCLUSION

26 Plaintiffs have not demonstrated that the law or the facts clearly favor them to
27 warrant a mandatory injunction. Accordingly, the Court should deny Plaintiffs' Motion.
28 RESPECTFULLY SUBMITTED this 2nd day of October, 2020.

15

|   |   |
|---|---|
| 1 | /s/ Linley Wilson |
| 2 | Kara Karlson (029407) |
|   | Linley Wilson (027040) |
| 3 | 2005 North Central Avenue |
|   | Phoenix, AZ  85004-1592 |
| 4 | (602) 542-4951 |
| 5 | *Attorneys for Defendant Arizona Secretary of State Katie Hobbs* |

16