Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
W. Vinnie Lichvar (#028112)
Derek C. Flint (#034392)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
        cahler@swlaw.com
        vlichvar@swlaw.com
        dflint@swlaw.com

Anni L. Foster (#023643)
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone: 602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Amicus Curiae Douglas A. Ducey, Governor of the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, Arizona Coalition for Change, Ulises Ventura,<br><br>Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona,<br><br>Defendant. | No. 2:20-cv-01903-SPL<br><br>**Brief of Amicus Curiae Governor Douglas A. Ducey in Support of Defendant** |

# INTEREST OF AMICUS CURIAE[1]

Governor Ducey has broad statutory and constitutional authority to ensure that the laws of Arizona are faithfully executed, guide policy decisions, and provide for the health and welfare of Arizonans. *See e.g.*, Ariz. Const. art. V, § 4; A.R.S. §§ 26-303, 41-101(A)(1)-(7). The Governor is also empowered to defend actions brought against him or his policies. *See* A.R.S. § 41-192(D)(7). During a declared state of emergency, Governor Ducey is temporarily granted: (a) "all police power vested in the state by the constitution and laws of this state in order to effectuate the [emergency management and response] purposes of [Title 26, Chapter 2]; and (b) the authority to "direct all agencies of the state government to utilize and employ state personnel, equipment and facilities for the performance of any and all activities designed to prevent or alleviate actual and threatened damage due to the emergency." A.R.S. § 26-303(E).

"As all are painfully aware, our nation faces a public health emergency caused by the exponential spread of COVID-19." *In re Abbott*, 954 F.3d 772, 779 (5th Cir. 2020). In response and consistent with his mandate, under A.R.S. § 26-301(15), Governor Ducey declared a state of emergency in "conditions of disaster" or during times of "extreme peril to the safety of persons." To date, the Governor has issued more than 40 executive orders related to COVID-19, including orders related to safe voting. *See* State of Arizona Executive Order No. 2020-50 (July 22, 2020). No group has directly requested to Governor Ducey to extend the voter registration deadline. Even if a request were made, Governor Ducey agrees with the Arizona Supreme Court that election administration laws should not be changed immediately prior to an election. *Arizonans for Second Chances, Rehabilitation, & Public Safety v. Hobbs*, --- P.3d ---, 2020 WL 5265545, at * 17 (Ariz. Sept. 4, 2020)

---

[1] Plaintiffs and Secretary Hobbs have indicated that they do not oppose Governor Ducey's participation in this matter as *amicus*. Furthermore, courts routinely allow parties to intervene or at least be heard via amici briefs when they have a clear stake in the continuing enforcement of government policy. *See Saunders v. Superior Court*, 109 Ariz. 424, 425-26 (1973). This is because if the policy is found unconstitutional or otherwise unenforceable, the "principles of stare decisis would effectively dispose of [the intervening party's] interest without any opportunity for them to be heard." *Id.* at 426.

Governor Ducey has three important interests in this matter. <u>First</u>, Plaintiffs' claims attempt to directly challenge Governor Ducey's coordinated response to COVID-19 by making the inaccurate assertion that his response somehow prevented them from obtaining voter registrations for five months. (Doc. 1 ¶ 58). Governor Ducey has a distinct interest in defending against challenges to his policies, including any direct or indirect challenge to properly promulgated emergency orders issued in response to a public health crisis. In particular, where a party falsely claims that Governor Ducey's orders have infringed on constitutionally protected activities (such as engaging with prospective voters relating to registration), Governor Ducey has a strong interest in being heard.

<u>Second</u>, Plaintiffs essentially ask this Court to issue a parallel emergency order in responding to the crisis, notwithstanding the Governor's statutory authority in this area. Governor Ducey has a distinct interest in defending his office's authority to effectively manage the declared emergency, including the scope and interpretation of his executive orders, against Plaintiffs' misinterpretations of the broad protections and preservation of all Arizonans' constitutional rights provided by his emergency orders.

<u>Third</u>, the Governor has an important interest in preventing chaos in the execution of state election laws on the eve of the General Election. *See* Ariz. Const. art. 5, § 4 (the Governor "shall take care that the laws be faithfully executed"). *See Yes on Prop 200 v. Napolitano*, 160 P.3d 1216, 1227-29 (App. 2007) (citing Ariz. Const. art. 5, § 4); *see also* A.R.S. § 16-452(B) (requiring the Governor to approve the Arizona Elections Procedures Manual "before its issuance"). Rather than adapting to the circumstances of COVID-19, as other groups did in collecting initiative signatures during the height of the pandemic, Plaintiffs are asking this Court to effectively assume the Governor's mandate to manage emergencies by issuing a judge-made emergency response policy. Worse yet, they are making this request at the eleventh hour in response to a set of alleged facts that has been well-known for at least the last six months.

Now, the November 3, 2020 election ("General Election") is a mere 32 days away. Voting is already underway. Absentee ballots to military and overseas voters (UOCAVA

voters) have already been mailed and some counties have actually received completed, voted ballots. Yet Plaintiffs inexplicably decided to bring their claims *less than one week* before the voter-registration deadline in A.R.S. § 16-120. Granting the Motion at this late stage would upend the expectations of all parties with an interest in the election's administration, including Governor Ducey, and threaten to introduce disarray. This is should not be allowed. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1206 (2020). Governor Ducey has an interest in clarifying any misstatements about the executive orders and ensure that the integrity of the General Election is maintained.

## **BACKGROUND**

On December 20, 2019, Governor Ducey, Secretary Hobbs, and Attorney General Mark Brnovich approved and published the Elections Procedures Manual ("Manual") which regulates Arizona elections in conformance with Arizona election laws.[2] The Manual specifically delineates the manner and requirements related to how an Arizona citizen can register to vote. *Manual*, at 1-43. Arizona citizens can register to vote in all the following ways: online or in-person through the Motor Vehicle Division; by mail using a voter-registration form (which is also available online); and in-person at a county recorder's office.[3] There are a multitude of political parties, candidates, and non-profit organizations involved in efforts to register voters, and all levels of government engage in significant marketing efforts to educate citizens on voter registration and the relevant deadline.[4]

---

[2] Arizona Secretary of State's Office, *Elections Procedures Manual* (Dec. 2019) (*"Manual"*), https://azsos.gov/elections/arizona-election-laws-publications.

[3] *See* Secretary of State, *Register to Vote or Update Your Current Voter Information*, https://azsos.gov/elections/voting-election/register-vote-or-update-your-current-voter-information (last visited Oct. 1, 2020).

[4] *See, e.g.*, Arizona Secretary of State's Office, *2020 General Election Publicity Pamphlet: November 3, 2020*, https://azsos.gov/sites/default/files/2020_General_Election_Publicity_Pamphlet_English.pdf, at 5; *see also* State of Arizona Election Procedure Manual 2019, https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf; at 21-22; Citizens Clean Elections Commission, *Register to Vote*, https://www.azcleanelections.gov/register-to-vote (last visited Oct. 2, 2020); Maricopa County Elections Department, *Register to Vote*, https://recorder.maricopa.gov/elections/registrationform.aspx (Oct. 2, 2020).

On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a pandemic. *McGhee v. City of Flagstaff*, No. CV-20-08081-PCT-GMS, 2020 WL 2308479, at *1 (D. Ariz. May 8, 2020). Later that same day, Governor Ducey issued a Declaration of Emergency for Arizona, citing to the WHO and U.S. Department of Health and Human Services declarations. *Id.* On March 13, 2020, President Donald Trump declared a national emergency. *Id.* On March 30, 2020, Governor Ducey issued EO 2020-18, which implemented a "Stay Home, Stay Healthy, Stay Connected" policy under which "all individuals in the State of Arizona shall limit their time away from their place of residence or property." Governor of the State of Arizona, *Stay Home, Stay Healthy, Stay Connected*, Exec. Order. No. 2020-18 (Mar. 20, 2020) (*"EO 2020-18"*). The executive order provided several exceptions, including participating in or using "Essential Activities," "Essential Functions," or "Essential Businesses." *Id.* at 3. Among other things, "Essential Activities" include "[e]ngaging in constitutionally protected activities such as speech and religion . . . provided that such is conducted in a manner that provides appropriate physical distancing to the extent feasible." *Id.* at 3.

On April 29, 2020, Governor Ducey issued EO 2020-33, which implemented a modified "Stay Home, Stay Healthy, Stay Connected" policy until May 15, 2020. Governor of the State of Arizona, *Amending the Stay Home, Stay Healthy, Stay Connected Order*, Exec. Order No. 2020-33, at 4 (Apr. 29, 2020) (*"EO 2020-33"*). This executive order maintained protections for essential businesses, functions, and activities, including constitutionally protected activities. *Id.* The stay-at-home order was lifted on May 12, 2020 by Executive Order 2020-36, which also provided express protections for constitutionally protected activities. *See* Governor of the State of Arizona, *Stay Healthy, Return Smarter, Return Stronger*, Exec. Order No. 2020-36, at 3 (May 12, 2020) (*"EO 2020-36"*).

Due to the COVID-19 pandemic and the Governor's COVID-19-related executive orders, in early April 2020, proponents of Arizona ballot initiative measures brought separate actions in the District of Arizona and the Arizona Supreme Court seeking revisions to Arizona election laws concerning signature gathering. *See Arizonans for Fair Elections*

- 4 -

*v. Hobbs,* ---F. Supp.3d---, 2020 WL 1905747 (D. Ariz. Apr. 17, 2020); *Arizonans for Second Chances, Rehabilitation, & Public Safety v. Hobbs*, --- P.3d ---, 2020 WL 5265545.[5] They claimed that collecting the required number of signatures in-person under the circumstances would be "impossible." *Arizonans for Fair Elections*, 2020 WL 1905747, at *9 n.10; *Arizonans for Second Chances*, 2020 WL 5265545, at *1. The District Court denied relief on April 17, 2020. *Arizonans for Fair Elections*, 2020 WL 1905747, at *17. The Arizona Supreme Court denied relief on May 13, 2020. *Arizonans for Second Chances*, 2020 WL 5265545, at *1. Despite the fact that relief was denied, the same ballot initiative committees that were parties to these two matters and that chose to continue gathering in-person signatures submitted their petitions to the Arizona Secretary of State on July 5, 2020, claiming they had collected enough signatures to qualify for the ballot.

On September 30, 2020, five days before the voter-registration deadline set forth in A.R.S. § 16-120, and *nearly six months after* the ballot initiative proponents brought their lawsuits, Plaintiffs filed this action making similar arguments. Namely, that the COVID-19 pandemic, combined with the Arizona's government's response, renders § 16-120 unconstitutional as applied. (*See* Doc. 1 at ¶ Doc. 1 at ¶¶ 109, 115).

## ARGUMENT

### I. Courts Should Not Administratively Micromanage State Emergencies

Similar to *Arizonans for a Fair Election v. Hobbs*, the Plaintiffs here "argue that the COVID-19 pandemic has effectively eliminated their ability to comply with Arizona's rules" regarding the ability to assist citizens to register to vote by October 6, 2020, as required by A.R.S. § 16-120. 2020 WL 1905747, at *2. At that time, on April 17, 2020 (almost a month after Plaintiffs here recognized that their plans to register voters was allegedly disrupted), this Court stated that "although it is impossible to predict how the pandemic will play out in the coming weeks and months, it is possible that conditions will abate to the point that in-person signature gathering again becomes viable before the July

---

[5] Of note, Plaintiffs do not even attempt to distinguish these on-point cases dealing with COVID-19 and the impact on Arizona's election laws.

- 5 -

2020 submission deadline for signatures." *Id*. Those initiatives that chose to continue to gather in-person signatures did, in fact, meet the July 2020 deadline.[6]

Nothing in Governor Ducey's executive orders hindered Plaintiffs from engaging in in-person or *virtual* voter registration efforts. Again, EO 2020-18 made clear that "constitutionally protected activities" were "Essential" and that individuals could continue to engage in such activities "in a manner that provides appropriate physical distancing to the extent feasible." *EO 2020-18*, at 3. EO 2020-33 contained an identical carve-out for "constitutionally protected activities." *EO 2020-33*, at 4. Likewise, EO 2020-36 stated "[n]othing in this order prevents a person from engaging in constitutionally protected activities." *EO 2020-36*, at 3; *see also EO 2020-43*, at 2 (prohibiting gatherings of more than 50 people, but permitting an exception for individuals "engaging in constitutionally protected activities"). As the act of engaging with and registering voters is constitutionally protected, it falls within these express authorizations. *See* Ariz. Att'y Gen. Op. No. I20-008 (Apr. 30, 2020) (concluding that predecessor order to EO 2020-33 did not prohibit church attendance because of exemption for "constitutionally protected activities").

Plaintiffs' apparent refusal to adapt to the pandemic is not grounds to demand emergency relief from a statute that has been in effect since 1990. Non-profit organizations (*e.g.,* churches, homeless shelters, legal aid, etc.), political committees (*e.g.*, candidates, political parties, and independent expenditure groups), and branches of government, including this Court, have had to modify their operations in order to fulfill their missions. "On this record, Plaintiffs have not demonstrated that Arizona law creates a severe burden that would prevent a reasonably diligent" non-profit organization from continuing its efforts to register voters in Arizona. *See Arizonans for Fair Elections*, 2020 WL 1905747, at *2.

As this Court recognized in *McGhee*, A.R.S. § 26-303(D) gives Governor Ducey the authority "to find" requisite circumstances exist to declare an emergency and to develop an appropriate response. 2020 WL 2308479, at *3. "The Supreme Court has 'disclaimed any

---

[6] https://azsos.gov/elections/initiative-referendum-and-recall

1  judicial power to second-guess the state's policy choices in crafting emergency public
2  health measures.'" 2020 WL 2308479, at *3 (citing *In re Abbott*, 954 F.3d 772, 784 (5th
3  Cir. 2020)) (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 28 (1905)). As this Court
4  previously highlighted, "it is also a profound thing for a federal court to rewrite state
5  election laws … Such an approach would raise significant separation of powers and
6  federalism concerns and run afoul of the Ninth Circuit's exhortation that, '[w]hile we are
7  mindful that federal courts have a duty to ensure that national, state and local elections
8  conform to constitutional standards, we undertake that duty with a clear-eyed and pragmatic
9  sense of the special dangers of excessive judicial interference with the electoral process.'"
10 *Arizonans for Fair Elections*, 2020 WL 1905747, at *3 (*citing Soules v. Kauaians for Nukoli*
11 *Campaign Comm.*, 849 F.2d 1176, 1182-83 (9th Cir. 1988)).
12       The conclusion to not micromanage an emergency via court order has been regularly
13 upheld in Arizona and across the country. *See, e.g.*, *Mesa Golfland v. Ducey*, No. CV-20-
14 01616-PHX-JJT, 2020 WL 5632141, at *3-4 (D. Ariz. Sept. 21, 2020); *Xponential Fitness*
15 *v. Arizona*, No. CV-20-01310-PHX-DJH, 2020 WL 3971908, at *5-11 (D. Ariz. July 14,
16 2020); *McGhee*, 2020 WL 2308479, at *2-6; *Mountainside Fitness Acquisitions v. Ducey*,
17 No. CV-2020-093916, 2020 WL 4218218, at *2-8 (Ariz. Super. Ct. July 8, 2020); *see also*
18 *League of Indep. Fitness Facilities & Trainers, Inc.*, 814 Fed. App'x 125, 126-30 (6th Cir.
19 2020); *Benner v. Wolf*, --- F. Supp.3d ----, 2020 WL 2564920, *3-9 (M.D. Penn. 2020);
20 *Hartman v. Acton*, --- F. Supp. 3d. ----, 2020 WL 1932896, at *4-12 (S.D. Ohio 2020); *Best*
21 *Supplement Guide, LLC v. Newsom*, No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at
22 *2-8 (E.D. Cal. 2020). Plaintiffs should not be able to open a Pandora's Box of delayed
23 constitutional claims when government action (i.e., executive orders) has not caused any
24 constitutional violation.

25 **II.    Plaintiffs' Claims Are Barred by the *Purcell* Doctrine.**

26       Just as the Supreme Court mandated caution in the judiciary micromanaging
27 emergencies in *Jacobson*, it also prohibits last minute changes to election laws immediately
28 before or during an election. "Court orders affecting elections, especially conflicting orders,

- 7 -

1  can themselves result in voter confusion and consequent incentive to remain away from the
2  polls. *As an election draws closer, that risk will increase.*" *Purcell v. Gonzalez*, 549 U.S. 1,
3  4-5 (2006) (emphasis added). For these reasons, as well as a state's compelling interest in
4  preserving the integrity of its election process, courts should not alter election laws close to
5  an election. *Id.*

6  Here, Plaintiffs assert no claims that could not have been raised well before the eve
7  of the voter registration deadline. Plaintiffs concede that their alleged inability to register
8  voters began in March when COVID-19 spread throughout Arizona. [Doc. 1 ¶¶ 35, 58-59.]
9  Plaintiffs state that due to executive orders, "Plaintiffs were effectively prevented from
10 registering voters in person." [*Id.* at ¶ 58.] This alleged hardship continued for *five months*.
11 [*Id.*] Nevertheless, Plaintiffs waited until nearly one month before the General Election and
12 five calendar days before the voter registration deadline to file this lawsuit. By waiting,
13 Plaintiffs created their own emergency. The Ninth Circuit has held that "[a] preliminary
14 injunction is sought upon the theory that there is an urgent need for speedy action to protect
15 the plaintiff's rights. By sleeping on its rights, a plaintiff demonstrates the lack of need for
16 speedy action." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir.
17 1984) (citations omitted); *see also Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d
18 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction
19 implies a lack of urgency and irreparable harm").

20 Despite this self-made emergency and ignoring the executive orders' recognition of
21 their right to register voters throughout the pandemic, Plaintiffs nonetheless request that the
22 Court re-write an Arizona election deadline that has been in effect since 1990. That state
23 statute requires all voter registration applications to be received by county recorders on
24 midnight of the twenty-ninth day preceding the date of the election—October 5, 2020 in
25 this instance. *See* Ariz. Laws 1990, 2nd Reg. Sess. (H.B. 2074). This deadline has remained
26 unchanged for 30 years and is not impacted by any governmental action in responding to
27 COVID-19. *Id*. Moreover, this lawsuit was filed more than nine months after the Elections
28 Manual was published and available to voters on December 20, 2019. *See Manual*.

1  Requesting that the Court enjoin a long-standing state election law on the eve of the General
2  Election is precisely the concern the Supreme Court raised in *Purcell*. *See Feldman*, 843
3  F.3d at 368-69 (holding that the *Purcell* doctrine is implicated when "a federal court
4  injunction would disrupt long standing state procedures.").

5  Plaintiffs provide no legitimate justification for their delay. *See Jarrow Formulas,
6  Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) (explaining that a plaintiff
7  must proffer "a legitimate excuse for its delay."); *see also Feldman v. Ariz. Sec'y of State's
8  Office*, 843 F.3d 366, 368 (9th Cir. 2016) (An injunction that affects the state's election
9  processes is a factor "that animated the Supreme Court's concern in *Purcell*.") Plaintiffs
10 allege that "[d]uring the months of April through July," their average registration of new
11 voters significantly declined. [Doc. 1 at ¶ 64.] Plaintiffs therefore knew, or had reason to
12 know, that any alleged impact of the executive orders responding to COVID-19 was present
13 for months prior to filing this lawsuit. Maintaining the status quo is particularly important
14 here, given that voting has already begun. Moreover, the burdensome obligations imposed
15 on County Recorders in having to receive, review, and verify voter registration applications,
16 and in some instances respond to those that are incomplete or illegible, for more than three
17 additional weeks cannot be accomplished this close to the election without creating
18 questions about the authenticity of those registrations. *See* A.R.S. §§ 16-120 & 16-134. In
19 light of the proximity to the election, as well as Plaintiffs' unjustifiable delay in filing this
20 lawsuit, the Court should dismiss Plaintiffs' claims. *See Purcell*, 549 U.S. at 5-6 ("Given
21 the imminence of the election and the inadequate time to resolve the factual disputes, our
22 action today shall of necessity allow the election to proceed without an injunction . . . .").[7]

23 **II.   The October 5 Voter Registration Deadline Does Not Violate Plaintiffs' First
24        and Fourteenth Amendment Rights.**

25 Section 16-120 does not unreasonably burden Plaintiffs' First and Fourteenth
26 Amendment rights. The two-part *Anderson/Burdick* framework is the standard under which

---

[7] For the same reasons outline above, Plaintiffs' claims are also barred by the laches doctrine.

- 9 -

these constitutional challenges are evaluated. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *see Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Under that framework, courts "must first consider the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate." *Short*, 893 F.3d at 676 (quoting *Anderson*, 460 U.S. at 789). If the asserted injury fails to demonstrate any burden, then "there is no reason to call on the State to justify its practice." *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 732 n.12 (9th Cir. 2015). Under this "balancing and means-end fit framework," the severity of the burden dictates the level of review required: if the burden is not severe, a state need only identify an important regulatory interest to justify a reasonable, non-discriminatory restriction. *See Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing *Burdick*, 504 U.S. at 434). Here, Plaintiffs' claims fail because the State's interests in administering its election regulations are "compelling," and outweigh the "minimal burden those regulations place on Plaintiffs." *See Thompson v. DeWine*, 959 F.3d 804, 811 (6th Cir. 2020).

### A. Section 16-120 imposes a minimal burden on Plaintiffs' rights.

Under the first prong, Section 16-120 does not impose a burden on First and Fourteenth Amendment rights. However, if arguably it does impose a burden, such is only minimal. Courts have repeatedly held that restrictions are "not severe" when they are "generally applicable, even-handed, politically neutral, and protect the reliability and integrity of the election process." *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) (internal citations omitted). Moreover, "First Amendment violations require state action," meaning that courts "cannot hold private citizens' decisions to stay home for their own safety against the State." *DeWine*, 959 F.3d at 810.

Specific to Plaintiffs' claims, a number of courts have addressed the burden imposed by COVID-19 interacting with existing state election regulations, concluding that the burden is not severe. For example, in *DeWine*, the Third Circuit rejected a First and Fourteenth Amendment challenge to ballot-initiative signature deadlines. *See id.* at 811. In assessing the burden on the plaintiffs, the court found it significant that the Ohio stay-at-

home order at the heart of the alleged burden "specifically exempted conduct protected by the First Amendment." *Id.* at 809. In fact, the court distinguished *Esshaki v. Whitmer*, 813 Fed. App'x 170 (6th Cir. 2020)—a case cited by Plaintiffs, (Doc. 2 at 6)[8]—on the ground that the orders at issue in *Esshaki* did not exempt First Amendment activity. *DeWine*, 959 F.3d at 809. The *DeWine* court further distinguished *Esshaki* on the ground that in *DeWine*, Ohio's stay-at-home restrictions were being lifted, whereas in *Esshaki*, the relevant stay-at-home order "remained in effect through the deadline to submit ballot-access petitions." *Id.* at 810.

In *Kishore v. Whitmer*, --- F.3d ---, 2020 WL 4932749 (6th Cir. 2020), the court rejected a challenge to Michigan's candidate signature-gathering requirement. Regarding the alleged burden, the court found that it was not severe because the plaintiffs had the opportunity to gather signatures for months before and months after the signature-submission deadline, but "made the conscious choice not to do so." *Id.* at *3. Many other courts, including the District of Arizona, have likewise concluded that the interplay between the COVID-19 pandemic and state election regulations does not impose a severe burden. *See Arizonans for Fair Elections v. Hobbs*, --- F. Supp.3d ---, 2020 WL 1905747, at *11 (Arizona's statutory signature-gathering requirements did not impose a severe burden because "a 'reasonably diligent' committee could have placed its initiative on the November 2020 ballot despite the Title 19 requirements and the COVID-19 outbreak"); *see also Hawkins v. DeWine*, 968 F.3d 603, 606 (6th Cir. 2020) (rejecting that the "the state's *response* to the pandemic" created an unconstitutional burden); *Libertarian Party of Penn. v. Governor of Penn.*, 813 Fed. App'x 834, 834 (3d Cir. 2020).

Here, any burden on Plaintiffs is not actionable because it was caused by the decisions of individuals, not the actions of the State. As in *DeWine*, *none* of the Arizona executive orders Plaintiffs claim affected their rights actually prevented them from

---

[8] *Fair Maps Nevada v. Cegavske*, No. 20 Civ. 271, 2020 WL 2798018 (D. Nev. May. 29, 2020), another case on which Plaintiffs rely, (Doc. 2 at 7-9), is distinguishable for the same reason: the COVID-19-related executive orders in that case did not include a carveout for constitutionally protected activity. *See Cegavske*, 2020 WL 2798018, at *3.

- 11 -

registering voters. EO 2020-18, the stay-at-home directive issued on March 30, 2020, expressly exempted "constitutionally protected activities" from its restrictions. *See Stay Home, Stay Healthy, Stay Connected*, Executive Order No. 2020-18, at 3 (Mar. 30, 2020). Similar language was included in two subsequent orders—EO 2020-33 and EO 2020-36. *See EO 2020-33*, at 4; *EO 2020-36*, at 3. Thus, Plaintiffs were free to continue registering voters—a constitutionally protected activity—during the stay-at-home order and all subsequent executive orders; any reduction in their voter-registration efforts was caused by their own "conscious choice[s]." *Kishore*, 2020 WL 4932749, at *3. The Court cannot hold this decision of Plaintiffs "to stay home . . . against the State." *DeWine*, 959 F.3d at 810.

It is also notable that the pandemic-related difficulties that different plaintiffs claimed to have in a similar case, *Arizonans for Fair Elections v. Hobbs*, turned out to be dramatically overstated. There, the plaintiffs claimed it would be "impossible" to collect a sufficient number of signatures to get their initiative petitions on the ballot without judicial intervention. *Arizonans for Fair Elections*, 2020 WL 1905747 at *9. Yet, despite the court's denial of relief, *id.* at *17, the proponents allegedly turned in a sufficient number of signatures to attempt to qualify for the ballot (two were subsequently disqualified due to court challenges). *See* Secretary of State, *Initiative, Referendum and Recall*, https://azsos.gov/elections/initiative-referendum-and-recall (last visited Oct. 1, 2020).

Moreover, any burden Plaintiffs experienced is minimized by the fact that they have had *years* to register voters. Arizonans can register to vote at any time, provided they do so "before midnight of the twenty-ninth day preceding the date of the election." A.R.S. § 16-134.[9] Plaintiffs have therefore had an unbounded amount of time to register voters; they were free to register as many voters as they wanted months or years ago—including during the pandemic. Consequently, the "burden" imposed by § 16-120 is therefore even *less* severe than the burdens in *Kishore* and *DeWine*, where the deadlines had front-end

---

[9] Arizonans can also register to vote in multiple ways—online, by mail, or in-person. *See* Secretary of State, *Register to Vote or Update Your Current Voter Information*, https://azsos.gov/elections/voting-election/register-vote-or-update-your-current-voter-information (last visited Oct. 1, 2020).

restrictions on signature-gathering. If anything, Plaintiffs' failure to register as many voters as they would like is evidence of their own lack of "reasonable diligence" in their voter-registration efforts. *See Arizonans for Fair Elections*, 2020 WL 1905747, at *12.[10]

## B. The State Has Important Interests in Upholding § 16-120.

Plaintiffs dramatically underplay the State's interest in A.R.S. § 16-120. Arizona "indisputably has a compelling interest in preserving the integrity of its election process. Confidence in the integrity of our electoral processes is essential to the function of our participatory democracy." *Purcell*, 549 U.S. at 4. States have a compelling interest in deadlines that allow key electoral functions "in an orderly and fair fashion." *DeWine*, 959 F.3d at 811; *see also Mays v. LaRose*, 961 F.3d 775 (6th Cir. 2020) (holding that the state has an "important regulatory interest in the orderly administration of elections"). A state's interest in deadlines that allow election officials to perform their duties in a timely manner are legitimate. *Hawkins*, 968 F.3d at 607; *see also Lynch v. Ill. State Bd. of Elections*, 682 F.2d 93, 97 (7th Cir. 1982) (holding that "[s]tandardization of election dates helps eliminate surprise and confusion" in the electoral process).

A.R.S. § 16-120 serves the State's interests in the orderly administration of elections by ensuring that State election officials, including the Secretary and the non-party county recorders, have enough time to perform mandatory duties that flow from voter registration. Among many others, these duties include registration verification, *see* A.R.S. § 16-166, inclusion on the permanent early voting list, *see* A.R.S. § 16-544, and management of early-ballot requests, *see* A.R.S. § 16-542. Thus, the State's legitimate and compelling interests in orderly election administration far outweigh the minimal burden on Plaintiffs.

## III. Plaintiffs Have Not Suffered Irreparable Harm.

Plaintiffs' likelihood of success on the merits is extremely low, which raises their

---

[10] As noted in *Arizonans for Fair Elections*, two cases Plaintiffs rely on here—*Florida Democratic Party v. Scott*, 215 F. Supp.3d 1250 (N.D. Fla. 2016), and *Democratic National Committee v. Bostelmann*, 2020 WL 1320819 (W.D. Wis. 2020)—are distinguishable because neither case "examined whether a reasonable voter would have already registered [to vote] by the time the respective crises struck." 2020 WL 1905747, at *12.

- 13 -

threshold requirement for showing irreparable harm. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Plaintiffs must demonstrate not only that irreparable harm is "possible" without an injunction, but that it is "likely." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 22). "Speculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

Plaintiffs allege (at 12-13) the "Voter Registration Cutoff" that has been in effect for 30 years threatens the First and Fourteenth Amendment rights of voter registration organizers. But as set forth above, any harm Plaintiffs suffered was caused by their own inaction, not by State action. *See Wham-O, Inc. v. Manley Toys, Ltd.*, No. 08-56188, 2009 WL 1353752, at *1 (9th Cir. May 15, 2009) (if the plaintiff can avoid the "purported harm," they cannot establish that it was irreparable); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (self-inflicted and avoidable injuries are not irreparable). Here, the alleged harm was *completely within Plaintiffs' control to avoid*. Plaintiffs have never been barred from registering voters and therefore any alleged harm is speculative.

**IV.   The Balance of Equities and Public Interest Tip Sharply in Favor of the Defendant.**

When the government is a party to a lawsuit, the Ninth Circuit "consider[s] the balance of equities and the public interest together." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). "Courts should be extremely cautious about issuing a preliminary injunction" when the injunction "goes beyond maintaining the status quo" and should not grant such relief "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (internal citation and quotations omitted). Plaintiffs' burden is heightened here because "election cases are different from ordinary injunction cases" and "[i]nterference with impending elections is extraordinary . . . ." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003).

Here, the balance of equities and the public interest tip decidedly in favor of the Defendant. A state "suffers an irreparable injury whenever an enactment of its people or

- 14 -

their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). And, as the Supreme Court recognized in *Purcell*, enjoining A.R.S. § 16-120 on the eve of the General Election would cause voter confusion and harm the orderly administration of the election. Moreover, Plaintiffs' requested relief—that the deadline for receipt and verification of voter registration applications be extended—directly implicates the duties of the County Recorders who are absent from this case.[11] *See* A.R.S. § 16-120 (voter registration applications must be "received by the *county recorder*" twenty-nine days or more before an election) (emphasis added). The County Recorders are actually charged with registering voters and administering elections. The imminence of what is expected to be an extraordinarily high voter turnout in this election, coupled with an ongoing worldwide pandemic, has already placed a considerable administrative burden on elections officials.[12] Plaintiffs' delay in filing suit only serves to displace and distract these parties from accomplishing the burdensome tasks associated with properly managing this election. Extending the voter registration deadline for more than three weeks will unquestionably place an extreme hardship on the counties' ability to facilitate the administration of this election and encourage challenges after the fact. For these reasons, Plaintiffs cannot establish that the balance of equities and public interest favor a preliminary injunction.

## CONCLUSION

Plaintiffs' claims all have serious defects: they are asserted too late; they are brought against non-joined but necessary and indispensable parties; and, overall, Plaintiffs' claims are not accompanied by the requisite factual support that attends plausible claims for relief. The Complaint should be dismissed in its entirety and with prejudice.

---

[11] For this reason, Plaintiffs' action is also barred by Rules 12(b)(7) and 19(a), Fed. R. Civ. P., for failing to include Arizona counties and their County Recorders, who are indispensable parties to this action.

[12] The requested injunction against A.R.S. § 16-120 would necessarily require counties and County Recorders to disregard this state statute and the Elections Manual—something the Secretary cannot direct them to do. In addition, the failure to join these necessary parties in their Complaint only exacerbates the *Purcell* problem: the counties will have no opportunity to be heard yet would bear the burden to implement radically different procedures so close to the election.

1 DATED this 2nd day of October, 2020.

2           SNELL & WILMER L.L.P.

3 By: s/ Brett W. Johnson
Brett W. Johnson
Colin P. Ahler
W. Vinnie Lichvar
Derek C. Flint
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
*Attorneys for Amicus Curiae Douglas A. Ducey*

By: s/ Anni L. Foster
Anni L. Foster
OFFICE OF ARIZONA GOVERNOR DOUGLAS A. DUCEY
1700 West Washington Street
Phoenix, Arizona 85007

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

*s/* Tracy Hobbs