Matthew D. Brinckerhoff (NY Bar # 2415537)*
Jonathan S. Abady (NY Bar # 2415222)*
Zoe Salzman (NY Bar # 4663308)*
Nick Bourland (NY Bar # 5576129)*
EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
mbrinckerhoff@ecbawm.com
jabady@ecbawm.com
zsalzman@ecbawm.com
nbourland@ecbawm.com

[Additional counsel cont. on next page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota; Arizona Coalition for Change; and Ulises Ventura,<br><br>              Plaintiffs,<br><br>v.<br><br>Katie Hobbs, in her official capacity as Arizona Secretary of State,<br><br>              Defendant. | No. 20 Civ. 1903 (SPL) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
AND IN OPPOSITION TO COMMITTEES' MOTION TO INTERVENE**

Mary R. O'Grady (AZ Bar #011434)
Joshua D. Bendor (AZ Bar # 031908)
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
jbendor@omlaw.com

John Bonifaz (MA Bar # 562478)**
Gillian Cassell-Stiga (NY Bar # 5069877)*
Ben Clements (MA Bar # 555082)**
Ronald Fein (MA Bar # 657930)**
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, Massachusetts 02459
(617) 249-3015
jbonifaz@freespeechforpeople.org
gillian@freespeechforpeople.org
bclements@freespeechforpeople.org
rfein@freespeechforpeople.org

* *Admitted Pro Hac Vice*
** *Pro Hac Vice Applications to be filed*

*Attorneys for Plaintiff*

**I.      THE BURDEN IS SEVERE AND REDRESSABLE**

This case does not challenge the constitutionality of the Governor's orders to protect the public from COVID-19. Rather, this case challenges the constitutionality of the Voter Registration Cutoff, as applied during this year's unprecedented pandemic. The Governor told the State at the end of June, over *three months* after COVID-19 first hit Arizona: "Right now, Arizonans are safer at home. And when you're away from home, don't forget to limit social gatherings, stay six feet from others, wash your hands and wear a mask."[1] These restrictions were necessary for the protection of the public health, but had an undeniable effect on voter registration efforts. Enforcement of the Voter Registration Cutoff in the wake of them severely burdens Plaintiffs' rights to register voters. Similarly, after a hurricane struck Florida and Georgia a month before the 2016 general election, the plaintiffs did not challenge the states' evacuation orders; rather, they successfully attacked the constitutionality of those states' voter registration cutoffs, as applied in the wake of the disaster. *See* Pl. Br. (Dkt. 2) at 10.

The severe burden on Plaintiffs' rights is evident not only in Plaintiffs' voter registration data, *id.* at 6-7, but also Defendant's own publicly-available statewide registration data, which clearly shows that from January to August 2020, Arizona netted only 62,565 new registrations, as compared to 146,214 during the same eight-month period in 2016, Salzman Decl. ¶¶ 1-7, Exs. A-D. It is a red herring for Defendant to argue "more Arizonans are registered to vote in 2020 than were registered to vote . . . in 2016." Dkt. 16 at 12. Arizona's total population is larger in 2020 than in 2016,[2] so necessarily there are more Arizonans registered in 2020. Defendant's own numbers show the *rate* of registration indisputably dropped during the pandemic.[3]

---

[1]      Office of the Governor, *Governor Ducey: "Arizonans Safer At Home"* (June 25, 2020), https://bit.ly/2VljtyF (Salzman Decl. Ex. E).

[2]      *See* Office of the Governor, *New Census Report Ranks Arizona Third in Percentage Growth Rate* (Dec. 31, 2019), https://bit.ly/2QfykJ0 (Salzman Decl. Ex. G).

[3]      The Governor's and Committees' argument that some ballot petition circulators managed to collect the required signatures is another red herring. Petition circulating and voter registration are apples and oranges: the former lending itself to socially distant

1

This severe burden on Plaintiffs' constitutional rights confers standing. Defendant mistakenly attributes Plaintiffs' injury to their inability to meet their own voter registration goals. Defendant confuses the symptoms of Plaintiffs' injury for the injury itself. Plaintiffs are unconstitutionally burdened by Defendant's enforcement of the Voter Registration Cutoff because it is preventing them from registering thousands of eligible Arizonans. That they are unable to meet their own target registration goals is just evidence of the severity of this burden.[4]

Finally, the data cited in Defendant's papers and undisputed evidence in the record prove that Plaintiffs' injury is redressable. Defendant's own Elections Director reports an increase of 234,266 registered voters since January 1, 2020. Dul Decl. (Dkt. 18-3) ¶ 10. Considering the State netted only 62,565 registered voters between January and August, Salzman Decl. ¶ 7, the State clearly saw a massive spike of registrations—approximately 171,710 additional voters—*after* restrictions were lifted in August. Indeed, Defendant highlights in her papers that 45,024 new or updated registrations were logged on September 22, 2020 alone. Dul Decl. ¶ 11. Defendant's data shows an average of 2,960 additional voters registered each day since the restrictions lifted; if that rate continues, approximately 65,120 additional voters will be registered between October 6 and 27, 2020. Salzman Decl. ¶ 8. Plaintiffs estimate their two organizations alone will be able to register approximately 2,000 voters in the extension period, and their broader coalition will be able to register over 25,000. Bravo Suppl. Decl. ¶ 3; Bolding Suppl. Decl. ¶¶ 2,7.

---

signature drives with people who "are already civically engaged," as opposed to the latter, which is "time-consuming," involves a "detailed registration form," and "almost always entails a lengthy conversation with the potential voter," who is necessarily not familiar with the registration process. Bravo Supp. Decl. ¶ 16. Tellingly, these non-parties do not cite any data to dispute the *drop in voter registration* established by Defendant's own data.

[4] MFV and ACFC have organizational standing because the record demonstrates their missions are frustrated by enforcement of the Voter Registration Cutoff and they diverted resources to respond. Pl. Br. (Dkt. 2) at 4-5. In any event, Plaintiff Ulises Ventura clearly has standing as an individual.

The *Anderson Burdick* analysis is fact-specific; Plaintiffs' strong showing of burden distinguishes this case from those cited by Defendant and the Committees.[5]

## II. THERE IS NO EVIDENCE OF COMPELLING STATE INTEREST

Because the evidence establishes a severe burden on Plaintiffs' constitutional rights, Defendant must prove that strict enforcement of the Voter Registration Cutoff is "narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation omitted). Although this Court specifically directed Defendant to focus their briefing on this issue, tellingly, neither Defendant, the Governor, nor the Committees did so. All three briefly asserted boilerplate state interests without evidence.

The only specific concerns identified are already-existing features of Arizona election procedures, even without an extension of the Voter Registration Cutoff. *First*, there is no showing of voter confusion: voters who registered by the original deadline of October 5 are unaffected by the extension; everyone else will either benefit from the extension or will remain unregistered just as they are without an extension. *Second*, there is no showing that Arizona cannot process registrations while voting is going on; the Secretary tellingly does not and cannot say that all registrations filed by October 5 would be processed by October 7 when early voting begins and does not dispute that Arizona already processes some registrations until 7:00 pm on election day. Pl. Br. (Dkt. 2) at 11; Martin Decl. (Dkt. 2-3) ¶¶ 37-39. *Third*, Arizonans can request to vote by mail at any time by making a one-time request for a ballot-by-mail; this means that, with or without a registration extension, some voters seeking to vote by mail will miss

---

[5] In *New Georgia Party v. Raffensperger*, for example, the evidence of burden was weak, consisting of data from a different State and ignoring Georgia's low absentee ballot rejection rates during COVID-19. No. 20-13360-D at 4-5 (11th Cir. Oct. 2, 2020). Similarly, in *Common Sense Party v. Padilla*, the burden was weak because plaintiffs had made only "minimal progress" in gathering signatures before the pandemic ever hit. No. 20 Civ. 01091, 2020 WL 3491041 at *6 n.6 (E.D. Cal. June 26, 2020).

3

the deadline for this year.[6] *Fourth*, Arizona's residency requirement is already enforced by requiring voters to show proof of Arizona residency when they vote, not when they register.[7] *Fifth*, Arizonans are already required to submit proof of citizenship to register to vote in state and local elections; if they fail to do so, they vote on a provisional ballot and their vote is counted only if they timely supply proof of citizenship. The same process will apply to voters who register during the extension.[8] Martin Decl. ¶ 41.

In short, unlike in cases cited by Defendant and the Committees,[9] here, there is no evidence that an extension of the Voter Registration Cutoff would prevent elections officials from handling these existing features of Arizona election procedure the same way they do every other year in the absence of an extension. *See id.* ¶¶ 19-22, 35-49. The only difference is that an extension will mean they apply these procedures for the benefit of more voters. "Elections administrators are accustomed to meeting urgent needs, particularly in the interest of voter enfranchisement. It is the nature of the work." *Id.* ¶ 34; *see also id.* ¶ 20.

Finally, as this Court already held, the County Recorders are not necessary parties. *Arizona Democratic Party v. Reagan*, No. 16 Civ. 03618, 2016 WL 6523427, at *6 (D. Ariz. Nov. 3, 2016) (Logan, J.). Nor does the remedy require any changes to Arizona law or Elections Manual. If the Court finds enforcement of the Voter Registration Cutoff unconstitutional as applied this year, Defendant will be compelled

---

[6]   Ariz. Sec'y of State, *Voting by Mail: How to Get a Ballot-by-Mail*, https://azsos.gov/votebymail (last visited Oct. 5, 2020) (Salzman Decl. Ex. H).
[7]   Ariz. Sec'y of State, *Voting In This Election*, https://azsos.gov/elections/voting-election (last visited Oct. 5, 2020) (Salzman Decl. Ex. F).
[8]   *See also* Ariz. Sec'y of State, *Proof of Citizenship Requirements,* https://azsos.gov/elections/voting-election/proof-citizenship-requirements (last visited Oct. 5, 2020) (Salzman Decl. Ex. I).
[9]   For example, in *Thompson v. Dewine*, defendant introduced evidence that "the witness and ink requirements help prevent fraud by ensuring that the signatures are authentic. And the deadlines allow them time to verify signatures in an orderly and fair fashion, while also providing initiative proponents time to challenge any adverse decision in court." 959 F.3d 804, 811 (6th Cir. 2020). No such evidence exists here.

4

by Court order to direct the County Recorders to continue doing what they already are doing, for three more weeks, so that thousands more voters can be registered.

### III. *PURCELL* DOES NOT APPLY TO REGISTRATION EXTENSION

"[T]he factors that animated the Supreme Court's concern in *Purcell* are not present" here because "the injunction at issue here does not involve any change at all to the actual election process." *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 368 (9th Cir. 2016). An extension of the voter registration period would simply allow more people to register and vote using the processes already in place. "[I]n our case, in contrast to *Purcell*, an injunction will not confuse election officials or deter people from going to the polls for fear that they lack the requisite documentation. The election process is unaffected." *Id.* Judge Rayes reached the same conclusion a few weeks ago when he enjoined the State to extend the cure deadline for unsigned vote-by-mail ballots, reasoning: "Plaintiffs are not asking election officials to devise new rules out of whole cloth. They are asking those officials to continue applying the same procedures they have in place now, but for a little longer." *Ariz. Democratic Party v. Hobbs*, No. 20 Civ. 1143, 2020 WL 5423898, at *13 (D. Ariz. Sept. 10, 2020).

*Purcell* was also a facial challenge, not an as-applied challenge brought in the midst of the most severe pandemic the world has seen in over a century. *See Democratic Nat'l Comm. v. Bostelmann*, 447 F. Supp. 3d 757, 770 (W.D. Wis. 2020) (rejecting *Purcell* argument because "some accommodation is necessary to preserve citizens' right to vote amidst this unprecedented public health crisis"); *People Not Politicians Or. v. Clarno*, No. 20 Civ. 1053, 2020 WL 3960440, at *7 (D. Or. July 13, 2020) (rejecting *Purcell* argument because "when these rules collide with unprecedented conditions that burden First Amendment access to the ballot box, their application must temper in favor of the Constitution.").[10]

---

[10]  The Supreme Court recently declined to apply *Purcell* to strike down an extension of time for the mailing of absentee ballots; it applied it only to that part of the district court's decision that modified election procedures for the counting of absentee

5

1   Finally, neither *Purcell* nor laches applies because there was no undue
2  delay. "In the context of election matters, the laches doctrine seeks to prevent dilatory
3  conduct and will bar a claim if a party's unreasonable delay prejudices the opposing
4  party or the administration of justice." *Democratic Nat'l Comm. v. Ariz. Sec'y of State's*
5  *Office*, No. 16 Civ. 01065, 2017 WL 11503449, at *2 (D. Ariz. Apr. 13, 2017) (citation
6  omitted). The undisputed evidence is that Plaintiffs brought this case as soon as it
7  became clear that an extension would allow thousands of additional people to be
8  registered. *See* Bravo Decl. (Dkt. 2-1) ¶¶ 34-38; Bolding Decl. (Dkt. 2-2) ¶¶ 22-31.
9  While their injury is now clearly redressable (*supra* Part I), it would not have been had
10 they brought the case earlier. Nor has there been any showing of prejudice. *Supra* Part
11 II.

## IV. POLITICIZED INTERVENTION SHOULD BE DENIED

"[A]n applicant seeking to intervene as of right has the burden to show that all four elements are met." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citations omitted). The Committees fail to carry their burden on two elements: significant protectable interest and inadequate representation.

Their asserted interest—"winning election or reelection" (Dkt. 15 at 4)—is not sufficient because "[t]he requirement of a significantly protectable interest is generally satisfied when the interest is protectable under some law." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003), *as amended* (May 13, 2003) (internal quotation marks omitted). No law protects the right to win an election. An extension of the voter registration period does not favor or disadvantage any particular political party. The proper forum for defending the Committees' interest in electoral victory is on the campaign trail, not in the courtroom.

Even if the Committees had a legally cognizable interest—which they do not—Defendant adequately represents such interests. "The most important factor in assessing

---

ballots. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207-08 (2020).

6

the adequacy of representation is how the interest compares with the interests of existing parties." *Citizens for Balanced Use*, 647 F.3d at 898 (internal quotation marks and citation omitted).

*First*, there is "an assumption of adequacy here when the government is acting on behalf of a constituency that it represents, which must be rebutted with a compelling showing." *Id.* (quotation marks and citation omitted). As this Court noted in *Reagan*, the Secretary of State "is Arizona's chief election officer who is responsible for overseeing and administering elections in Arizona." 2016 WL 6523427, at *6 (citing Ariz. Rev. Stat. § 16-142(A)). Because Defendant is the State's highest elections official, a presumption of adequacy of representation exists.

*Second*, adequacy of representation is further presumed because Defendant and the Committees seek the same ultimate objective: to defend the Voter Registration Cutoff. *See Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted) (holding that adequacy is presumed when an intervenor and existing party "share the same ultimate objective"). Here, according to the Committees, "both [Defendant] and the Proposed Intervenors take the position that the voter registration deadline . . . is constitutionally sound and fully enforceable." Committees' Br. (Dkt. 15) at 7. The Committees' briefing makes the same arguments Defendant's makes. *See* Def. Opp. (Dkt. 16) at 15 (arguing that "[t]he Deadline does not violate the Constitution.").

*Third*, "[b]ecause [the Committees] and [Defendant's] interests are essentially identical, the [Committees] may only defeat the presumption of adequate representation with a 'compelling showing' to the contrary." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 952 (9th Cir. 2009) (citation omitted). The Committees' speculation that they may have a different motivation than Defendant fails to carry this heightened burden. "[M]ere differences in litigation strategy are not enough to justify intervention as a matter of right." *Id.* at 954 (quotation marks and citation omitted).[11] As Chief Judge

---

[11]   The Committees' claim that Defendant may not pursue an appeal of an adverse ruling is entirely speculative and fails to rebut the presumption of adequacy. *See*

7

Snow found last month in rejecting a similar politically-motivated intervention by the Committees, the Secretary of State "is more than capable of defending the constitutionality of the [Voter Registration Cutoff] without the Committees' assistance." *Yazzie v. Hobbs*, No. 20 Civ. 8222, Dkt. 45 at 7 (D. Ariz. Sept. 16, 2020).

The Court should deny permissive intervention for the same reasons. *See United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention where the government party to the case made the same arguments as the intervenors, and would adequately represent the intervenors' interests).

V. **WITHOUT AN EXTENSION, THERE WILL BE IRREPARABLE HARM**

Absent an extension of the Voter Registration Cutoff, Plaintiffs will suffer irreparable harm. Defendant's data shows approximately 65,120 new voters would be registered with an extension until October 27, 2020. Salzman Decl. ¶ 8. Plaintiffs' organizations alone will be able to register approximately 2,000 and their broader coalition will be able to register over 25,000. Bravo Suppl. Decl. ¶ 3; Bolding Suppl. Decl. ¶¶ 2,7. If an extension is not granted, Plaintiffs' voter registration efforts will be halted by the State. At best, Defendant articulated a minimal burden which is wholly insufficient to justify severely burdening Plaintiffs' rights and the disenfranchisement of thousands of voters. The balance of the equities favors Plaintiffs, as well as the public's interest in expanding the voting franchise.

DATED this 5th day of October, 2020.

                                          EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

                                          By   s/ Zoe Salzman

---

*Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011) ("[I]f the mere possibility that [Defendant] *might* decline to appeal were sufficient to rebut the presumption of adequacy, then nearly every case involving [Defendant] would be subject to intervention as of right."). Defendant has every right to decide not to appeal based on the uncertainty that an appeal would create during the extended registration period—a decision the Committees have no right to override.

8

        Matthew D. Brinckerhoff
        Jonathan S. Abady
        Zoe Salzman
        Nick Bourland

OSBORN MALEDON, P.A.

        Mary R. O'Grady
        Joshua D. Bendor

FREE SPEECH FOR PEOPLE

        John Bonifaz
        Gillian Cassel-Stiga
        Ben Clements
        Ronald Fein

*Attorneys for Plaintiffs*