**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., ) | No. CV-20-01903-PHX-SPL |
| ) | |
| Plaintiffs, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Katie Hobbs, ) | |
| ) | |
| Defendant. ) | |
| ) | |

On September 30, 2020, two non-profit organizations, Mi Familia Vota and the Arizona Coalition for Change, and an individual voter organizer with Mi Familia Vota, Ulises Ventura (together "Plaintiffs"), filed a Complaint seeking a declaratory judgment (Doc. 1) and an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction against Defendant Arizona Secretary of State Katie Hobbs. (Doc. 2) On October 2, 2020, Defendant filed a Response in Opposition. (Doc. 16) Also on October 2, 2020, Intervenor-Defendants Republican National Committee and National Republican Senatorial Committee filed a Motion to Intervene. (Doc. 15) The Court granted the Motion to Intervene and the Clerk of Court filed the Intervenor-Defendants' Response in Opposition to the Plaintiffs' Motion (Doc. 26) and the Intervenor-Defendants' Answer. (Doc. 27)[1] The Court also granted Governor Douglas A. Ducey's Motion for Leave to File

---

[1] To the extent Plaintiffs argue the Court should reconsider its decision to grant Defendant-Intervenors leave to intervene, the request is untimely due to the fast-turnaround needed in this case and will not be considered by the Court.

Amicus Brief in Support of Defendant, which the Clerk of Court filed. (Doc. 29) Due to the urgent nature of this case, the Court held oral argument on the matter on Monday, October 5, 2020. The Court also exercises its discretion under Federal Rule of Civil Procedure 65(a)(2) to consolidate the trial on the merits with the hearing on the temporary restraining order and preliminary injunction. Furthermore, because the requested injunction is longer than 14 days, pursuant to Rule 65, the Court will treat Plaintiffs' request as a request for a preliminary injunction. For the reasons that follow, the preliminary injunction is granted as modified.[2]

## I.    BACKGROUND

Plaintiffs allege that if Defendant were to enforce the Arizona Voter Registration Deadline of October 5, 2020, their First and Fourteenth Amendment Rights would be burdened. (Doc. 1 at 17) They seek an extension of the voter registration deadline to October 27, 2020. Defendant alleges that (1) Plaintiffs are not likely to succeed on the merits of their claims, (2) Plaintiffs fail to show the enforcement of the deadline will cause irreparable injury, and (3) an extension of the deadline would result in hardship to election officials and result in public confusion. Intervenor-Defendants allege that (1) Plaintiffs' action is untimely, (2) Plaintiffs failed to join all necessary parties, (3) Plaintiffs lack standing, and (4) the deadline does not burden Plaintiffs' rights and is necessary to vindicate important state interests.

## II.   LEGAL STANDARDS

When deciding whether to grant a preliminary injunction, courts follow the test set out by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S.

---

[2] Rule 65 provides that no injunction shall issue except with the giving of security by the applicant for the payment of costs and damages that may be incurred by any party found to be wrongfully enjoined. Although the language is mandatory, courts have discretion as to the amount of the security and may dispense with the requirement when they conclude there is no likelihood of harm or when the plaintiff's constitutional rights are affected. *See Reed v. Purcell*, No. CV 10-2324-PHX-JAT, 2010 WL 4394289, at *5 (D. Ariz. Nov. 1, 2010). As the likelihood of harm to Defendant is low, Defendant has not requested a bond, and Plaintiffs' First and Fourteenth Amendment rights are affected, this Court will waive the bond requirement.

7 (2008). A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor and, (4) an injunction is in the public interest. *Id*. at 20. The Ninth Circuit has also approved a "sliding scale" test. "A preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor. . . . Of course, plaintiffs must also satisfy the other *Winter* factors." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (internal citations and quotations omitted).

### III. DISCUSSION

Due to the urgent nature of this matter, the Court will now address the request for the preliminary injunction with the merits of the case. *See* Rule 65(a)(2).

#### A. Plaintiffs' success on the merits

A plaintiff seeking an injunction must first establish likely success on the merits. *See supra* II. Before determining likelihood of success on the merits, the Court must also determine whether Plaintiffs have standing and whether the Complaint (Doc. 1) was timely filed.

##### i. Standing

Article III standing requires would-be plaintiffs to establish (1) injury in fact that is (2) fairly traceable to the challenged conduct of the defendant that is (3) likely to be redressed by a favorable judicial decision. *Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 918 (9th Cir. 2018). Defendant and Intervenor-Defendants argue that Plaintiffs lack standing because there has been no state action and because the harm suffered is not redressable. (Doc. 16 at 8–9; Doc. 26 at 8–10) Defendant and Intervenor-Defendants further argue that Plaintiffs failed to join all necessary parties and they should have also sued the 15 County Recorders of Arizona. (Doc. 16 at 9; Doc. 26 at 7) Plaintiffs argue they can establish standing because organizations have standing when their organizational mission is frustrated, and when they have diverted resources to combat

3

the conduct in question. (Doc. 2 at 6) (citing *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019)). The conduct in question here is enforcement of the voter registration deadline. (Doc. 2 at 6–7) The resources Plaintiffs expended include paying registration workers higher salaries, re-allocating staff to registration efforts, developing health and safety protocol, and engaging in extra fundraising and re-budgeting. (Doc. 2 at 7) Plaintiffs further argue that the County Recorders are not necessary parties because this Court has ruled on that issue in the past and found that because the Secretary of State promulgates the voter registration rules, the counties are bound by them. (Doc. 30 at 6) *See Arizona Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *7 (D. Ariz. Nov. 3, 2016).

Other courts have recently found there to be standing when organizational plaintiffs' efforts to gather ballot initiative signatures this year were frustrated due to COVID-19. *See, e.g.*, *Fair Maps Nevada v. Cegavske*, No. 320CV00271MMDWGC, 2020 WL 2798018, at *6 (D. Nev. May 29, 2020). Furthermore, an injunction against the Secretary of State would redress the harm alleged by Plaintiffs. *Reagan*, 2016 WL 6523427, at *7.  Thus, the Court finds Plaintiffs have sufficiently established organizational standing by showing their organizational mission was frustrated, that they have diverted resources to combat the effects of COVID-19, and that the County Recorders are not necessary parties to this action because they answer to the Defendant.

### ii.     Timeliness

Defendant and Intervenor-Defendants also argue the claim is untimely due to the *Purcell* doctrine as well as the equitable doctrine of laches. (Doc. 16 at 10–11; Doc. 26 at 2–7) They argue that (1) Plaintiffs should have brought the claim earlier, when it was clear COVID-19 was having an impact on registration, and (2) election rules should not be changed on the "eve of an election." (Doc. 16 at 10–11, Doc. 26 at 2–7) The *Purcell* doctrine comes from Supreme Court case *Purcell v. Gonzales*, 549 U.S. 1 (2006). *Purcell* discourages courts from creating or altering election rules close to elections to avoid voter confusion.  *Id.* at 4–5. This Court has previously held that the *Purcell* doctrine does not

apply to the extension of election deadlines because the requested remedy is "asking [election] officials to continue applying the same procedures they have in place now, but for a little longer." *Arizona Democratic Party v. Hobbs*, No. CV-20-01143-PHX-DLR, 2020 WL 5423898, at *13 (D. Ariz. Sept. 10, 2020). The Court finds the current case no different.

The laches doctrine bars claims when there is "unreasonable delay" in bringing the suit that "prejudices the opposing party or the administration of justice." *Arizona Libertarian Party v. Reagan*, 189 F. Supp. 3d 920, 922 (D. Ariz. 2016) (internal citations omitted). "To determine whether delay was unreasonable, a court considers the justification for the delay, the extent of the plaintiff's advance knowledge of the basis for the challenge, and whether the plaintiff exercised diligence in preparing and advancing his case." *Id.* at 923. Here, Plaintiffs told the Court during the October 1, 2020 scheduling conference that they were waiting to bring this claim until they knew the harm could be redressed by extending the voter registration deadline, and thus establish standing, and reasserted that argument in their Reply brief and in oral argument. (Doc. 30 at 8) The State's COVID-19 restrictions were lifted in August. Plaintiff Mi Familia Vota has been able to register about 1,094 voters per week since the last week of August, as opposed to the less than 200 registered during the restrictions. (Doc. 2-1 at 6) Plaintiff Arizona Coalition for Change has been able to register 1,343 voters in August and September. (Doc. 2-2 at 4–5) Plaintiffs argue they will be able to register about 2,000 voters in three weeks, and that their coalition will be able to register 25,000 more voters if the deadline is extended. (Doc. 30 at 2) Plaintiffs also assert that, based on new State data, around 65,120 voters would be able to register in the three-week extension period, if it is granted. (Doc. 30 at 2) Thus, because Plaintiffs needed the September data to establish standing and to diligently prepare their case, the Court finds the claim is not laches-barred.

### iii.   *Anderson/Burdick* test

When a plaintiff alleges a violation of voter rights under the First and Fourteenth Amendments, courts apply the *Anderson/Burdick* balancing or sliding scale test. *Soltysik*

*v. Padilla*, 910 F.3d 438, 449 n.7 (9th Cir. 2018). The "character and magnitude" of the state-imposed burden on the plaintiff is weighed against the strength of the state's interest and whether the burden is necessary given the state interest. *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1025 n.2 (9th Cir. 2016). In *Burdick v. Takushi*, the Supreme Court held that if the restriction on First and Fourteenth Amendment rights is severe, the restriction must be "narrowly drawn" to advance a "compelling" state interest. 504 U.S. 428, 434 (1992). If the restriction is less severe, the more flexible balancing test applies. *Id.* If the restriction is non-discriminatory and reasonable, a state's "important regulatory interests" are usually enough justification for the rule. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Generally, when the constitutional challenge is to an electoral system the governmental interest is given more weight than when the challenge is to a discrete election rule. *See generally Pub. Integrity All., Inc.*, 836 F.3d 1019.

Plaintiffs argue the burden is severe because the deadline combined with COVID-19 restricts ballot access. (Doc. 2 at 8–9) Plaintiffs cite other courts that have applied the stricter balancing test in light of COVID-19. (Doc. 2 at 9–10) Some but not all those cases are relevant here; the cases resolving voter registration deadlines are more helpful than those regarding ballot initiative petitions. *See, e.g.*, *Democratic Nat'l Comm. v. Bostelmann*, No. 20-CV-249-WMC, 2020 WL 5627186, at *17–22 (W.D. Wis. Sept. 21, 2020) (extending Wisconsin's statutory voter registration deadline and absentee ballot deadlines); *Gallagher v. N.Y. State Bd. of Elections*, No. 20 CIV. 5504 (AT), 2020 WL 4496849, at *16–18, 23 (S.D.N.Y. Aug. 3, 2020) (extending New York's statutory mail-in ballot postmark deadline in light of COVID-19). Here, Defendant argues that the burden is not severe, and the Court should instead apply the more flexible balancing test, based on a holding in the Eastern District of California. (Doc. 16 at 11–12) That court found that the burden was not severe on a political party attempting to register voters when voters could have registered without in-person contact and when the state COVID-19 restrictions exempted election-related activities. *Common Sense Party v. Padilla*, No. 220CV01091MCEEFB, 2020 WL 3491041, at *1, 6 (E.D. Cal. June 26, 2020). Defendant-

6

Intervenors argue that the challenge is to the electoral system and thus the governmental interest should bear more weight in the analysis. (Doc. 26 at 11)

The Court finds, similarly as it did in regard to the *Purcell* doctrine, that the challenge is to the enforcement and execution of one rule and not the whole system, and thus the government's interest will not be given extra weight. The Court further finds Plaintiffs have shown the burden is severe, unlike the plaintiffs in *Padilla*, because of the large drop-off in registration during the months of the pandemic restrictions, as discussed below.

Plaintiffs offer data that shows that they could not reach the same number of voters during the pandemic months. (Doc. 2 at 8) Before COVID-19, Plaintiffs were registering about 1,523 voters a week, which dropped to 282 a week during the restrictions. (Doc. 2 at 8–9) After COVID-19 restrictions were lifted, their registration numbers returned to almost the same as before the pandemic. *See supra* III.A.ii. Defendant argues the right was not restricted and that more voters have registered in 2020 than during the 2016 presidential election. (Doc. 16 at 12) Plaintiff rebuts this argument by showing with state and census data that the State population has grown since 2016, and that the voter registration did not grow proportionally this year. (Doc. 30 at 3; Docs. 30-2, 30-3, 30-4, 30-5, 30-6, 30-7, & 30-8) Defendant argued at oral argument that the changes in the data collection methods caused the discrepancy. Defendant also argues voter registration is not an in-person activity and thus the cases Plaintiffs cite involving in-person activities (*e.g.*, signature gathering for ballot initiative measures) are distinguishable. (Doc. 16 at 14–15) Defendant-Intervenors argue that registering to vote "has never been easier" because voters can register online and via telephone, and also point to the signatures collected for ballot measures as proof that in-person solicitation could still occur during COVID-19 restrictions. (Doc. 26 at 10–16)

While this Court acknowledges the efforts made by the Secretary and the State to make voter registration easier, the Court is also cognizant of the large population of Arizona that lacks access to the internet. Registering to vote has never been easier for *some*,

though others are not so fortunate. Ballot access is an extremely important right, and it has been restricted during this unprecedented time. Furthermore, the change in data collection from 2016 to now does not account for the percentage drop in voter registration, particularly considering the great deal of population growth.

The Court asked the Defendant to address the administrative burdens on the state in its Response, and Defendant did not do so, beyond referring to difficulties with voters who register too close to the election requesting an early voting ballot. (Doc. 16 at 13) Those voters may not receive or return their ballots in time to be counted. (Doc. 16 at 13) Early voting closes on October 23, 2020. Defendant also argues that election officials will have to process early votes alongside new voter registration if the deadline is extended. (Doc. 16 at 13) Defendant generally cites the state interest in orderly elections. (Doc. 16 at 12) Intervenor-Defendants argue that the deadline is necessary to ensure voters have lived in the state for 29 days before voting (a state voter eligibility requirement), that Defendant needs time to verify voter residency before Election Day, and that extending the deadline will result in voter confusion. (Doc. 26 at 15–16)

The Court recognizes the importance of reducing voter confusion and ensuring Arizona's other voter regulations are able to be upheld. However, the Court takes note that 31 other states have later voter deadlines than Arizona, many of which allow voters to register when they show up to vote on Election Day. Furthermore, the Intervenor-Defendants' argument that the October 5, 2020 deadline is necessary to enforce the State's 29-day residency rule is unpersuasive, considering Arizona voters are required to present proof of residency at the polls on Election Day. Finally, the Court agrees with Plaintiffs' point made in oral argument that voter confusion will be minimal. Voters who are already registered will not need to bother with the new deadline, and those voters that were unable to register before October 5, 2020 now have extra time. The Court acknowledges the difficulty with early voting requests coming in after the deadline for early voting has passed, and notes that Plaintiffs admitted during oral argument that even a shorter extension would help cure their harm.

Weighing the burden to Plaintiffs' constitutional rights and the administrative burden on the government, the Court concludes that Plaintiff has met their burden under *Anderson/Burdick*. However, finding the State's concerns about early voting requests to be compelling, the court will take them into account when granting relief.

### B. Plaintiff's harm in the absence of relief

Plaintiff has shown that fewer voters will be registered in this State if the deadline is not extended. *See supra* III.a.iii. As previously discussed, the harm suffered is loss of possibly tens of thousands of voter registrations, and a burden to Plaintiffs' First and Fourteenth Amendment rights to organize voters. To the extent that Intervenor-Defendants argue Plaintiffs cannot establish harm based on expenditures made to register voters, Plaintiffs made no such argument and thus it will not be considered by the Court.

### C. The balance of equities and the public interest

When the government is a party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of equities has been addressed in the *Anderson/Burdick* analysis. Plaintiffs' interests outweigh those of the government. The public interest factor cuts both ways, though it ultimately falls in favor of Plaintiffs. Voter confusion undermines public trust in the electoral process, and it is highly important that Defendant retains a sense of integrity in its procedures. However, a core tenet of democracy is to be ruled by a government that represents the population. Due to COVID-19, a portion of the population is prevented from registering to vote, and thus the integrity of the election is undermined in a different way; that portion is going unrepresented. Extending the deadline would give more time for those voters to register and let their voices be heard through the democratic process.

### IV. CONCLUSION

The Court finds that Plaintiffs have established standing, made a timely claim, and met their burden under the *Anderson/Burdick* test. Defendant and Defendant-Intervenors have failed to show the administrative burden on the state outweighs the burden on Plaintiffs' First and Fourteenth Amendment rights. However, taking into account the Early

Voting deadline of October 23, 2020 and the issues that may arise with voters requesting early voting ballots after that deadline, the Court will grant a preliminary injunction on the voter registration deadline until October 23, 2020 to alleviate any potential problems with belated requests for any Early Voting ballots beyond that date. Accordingly,

**IT IS ORDERED** that Plaintiffs' request for a preliminary injunction (Doc. 2) is **granted as modified**.

**IT IS FURTHER ORDERED** that Defendant is preliminarily enjoined from enforcing the A.R.S. § 16-120 October 5, 2020 voter registration cutoff.

**IT IS FURTHER ORDERED** that Defendant shall direct the County Recorders to accept all voter registration applications received by 5:00 p.m. on October 23, 2020 and process them in time for eligible voters to vote in the November 3, 2020 general election.

**IT IS FURTHER ORDERED** that the Court exercises its discretion and waives the requirement of a security bond accompanying this preliminary injunction.

**IT IS FURTHER ORDERED** that this case is **dismissed**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action.

Dated this 5th day of October, 2020.

Honorable Steven P. Logan
United States District Judge